1834.

Hannan
v.
Osborn.

HANNAN and others *vs.* OSBORN and others.

Where the sister of the testator, at the time of the making of his will and at his death had but one child, and he devised the residue of his real and personal estate to such sister, to hold the same to her and her children forever, with a devise over, in case she should die, and all her children should die, leaving no children; *Held,* that under the revised statutes, the sister took an estate for life in the property, and that the child took a vested remainder in fee, subject to open and let in after born children; and that the limitation over after the death of all the children of the sister without issue was void, being too remote as to the after born children.

Under the statute of descents which was in force previous to the revised statutes, there was no representation among the collateral heirs of a decedent, beyond brothers' and sisters' children.

Where one tenant in common receives more than his share of the rents and profits of the estate held in common, his co-tenant has an equitable lien upon his undivided interest in the premises, which may be enforced against the same, while the parties continue to hold the premises in common.

Upon the death of a tenant in common who has received more than his share of the rents and profits of the estate, the amount due to his co-tenant, which is a personal charge, is payable primarily out of the personal estate of the decedent.

A tenant in common, who has been in possession, and received the whole rents and profits of the estate, in accounting for such rents and profits to his co-tenants, is entitled to an allowance for such sums as he may have paid for taxes or assessments on the premises, or for keeping the same in ordinary repair.

January 28. THE bill in this cause was filed in 1821, by Alexander Hannan and Margaret his wife, against Ann Osborn and Catharine Raborg, for the partition and sale of a lot of land, in the city of New-York, and for an account of the rents and profits thereof; and the bill prayed that certain bonds and mortgages which had been assigned to Alexander Hannan, and which were a lien upon the premises, might be paid out of the proceeds of the sale. The bill was afterwards amended by making Richard Woodhull a party defendant. The complainants alleged, in their bill, that the premises in question belonged to Margaret Lent at the time of her death, in 1812; and that she died intestate, leaving a brother and sister, James W. Lent, and Catharine Raborg, and several children of her deceased brother and sister, John Lent and Cornelia Young,

1834.

Hannan
v.
Osborn.

to whom the premises descended, as her heirs at law, charged with the liens of the several bonds and mortgages, which were afterwards assigned to Alexander Hannan. James W. Lent afterwards released and quit claimed all his interest in the premises to the other heirs of Margaret Lent. Margaret, the wife of A. Hannan, one of the daughters of Cornelia Young, claimed two twelfths of the premises as one of the heirs at law of Margaret Lent; and her husband claimed five twelfths of the premises by purchase from some of the other heirs. The complainants also alleged in their bill, that Ann Osborn was entitled to one twelfth of the premises, as one of the four children of John Lent, deceased, and that Catharine Raborg was the owner of the remaining four twelfths. Mrs. Raborg admitted by her answer that she held the premises as a tenant in common with the complainants and others; but she denied that Margaret Lent was the owner of the whole lot at the time of her death. On the contrary, she alleged that the lot in question belonged to her mother Ann Lent, who died in possession thereof in 1784; and that upon her death it descended to her six children, to wit, Margaret Lent, the four brothers and sisters of Margaret named in the complainant's bill, and another sister, Ann Lawrence, the great grand mother of the infant defendant, Richard Woodhull. Ann Osborn suffered the bill to be taken as confessed against her; and R. Woodhull put in a general answer, by his guardian. Mrs. Raborg died pending the suit; and by her will devised her interest in the premises to her two daughters, Margaret Raborg, and Mary, the wife of David Lent, against whom the suit was subsequently revived. A. Hannan also died pending the suit, in October, 1830; and by his will, after giving certain legacies, and an annuity, to his wife, in lieu of dower, devised the remainder of his estate, both real and personal, to his sister Mary Ann, the wife of Thomas Philips; to have and to hold the same to her and her children forever. But in case she should die, and all her children should die, leaving no children, then he gave the property over to his brother and sisters, John Hannan, Julianna Stone, and Amelia Manchester. The suit was thereupon revived and contin-

tried against the former defendants, by a bill filed by Margaret Hannan, the surviving complainant, and by Thomas Philips and wife, as the devisees of Alexander Hannan. Sarah H. Philips, an infant daughter of Mary Ann Philips, who was in esse at the death of the testator, and the brother and sisters of A. Hannan, to whom the contingent interest was given by the will, were also made parties defendants.

The cause was brought to a hearing upon the pleadings and proofs.

*G. B. Hall,* for the complainants, cited *Mumford* v. *Brown,* (6 *Cowen,* 475;) 1 *R. L. of* 1813, *p.* 53, § 3; 1 *R. S.* 752, § 8; *Pett* v. *Pett,* (1 *Comyn's Rep.* 87 ;) *S. C.* 1 *Salk.* 250 ; 1 *P. Wms.* 25 ; *Maw* v. *Harding,* (2 *Ver. Rep.* 233.)

*M. Hoffman,* for the infant defendant Sarah H. Philips, cited *Jeffery* v. *Honeywood,* (4 *Mad. R.* 398 ;) *Oates* v. *Hatterly,* (2 *Strange,* 1172 ;) *Coke Litt.* 9, *a.* ; *Cooke* v. *Cooke,* (2 *Vernon,* 545, 455 ;) *Frederick* v. *Frederick,* (*Cro. Eliz.* 384 ;) *Wilde's case,* (6 *Coke's Rep.* 18 ;) *Murry* v. *Wise,* (2 *Vernon,* 564 ;) *Hockley* v. *Mawley,* (1 *Ves. jun.* 145 ;) *Newman* v. *Nightingale,* (1 *Cox's Ch. Cas.* 141 ;) *Warner* v. *Hone,* (*Prec. in Ch.* 491 ;) *Oates* v. *Jackson,* (2 *Vernon,* 106.)

*T. Phœnix,* for the devisees of Mrs. Raborg, and the infant defendant Richard Woodhull.

*E. C. Benedict,* for Julianna Stone and the other persons claiming a contingent interest under the will of A. Hannan.

*W. Talmadge,* for the defendant Ann Osborn.

THE CHANCELLOR. The first question to be examined in this cause is, whether Margaret Lent, at the time of her death, was the owner of the whole lot, or was only entitled to the sixth part thereof as one of the heirs at law of her mother, who died in 1784. If Ann Brewster, the grand niece of Margaret Lent, was to be entitled to a share of her property under the statute of descents, then it can make no difference

with the other parties to this suit, whether the whole lot originally belonged to Margaret Lent, or to her mother, as their several interests in the property would be precisely the same ; provided the one sixth of the property is sufficient to pay the bonds and mortgages given by Margaret Lent. But if the grand niece could not inherit under the statute of descents which was in force in 1812, then Mrs. Raborg would be entitled to a greater share of the estate as one of the four heirs of her sister for the whole lot, than she would be if she takes but one sixth as the heir of her mother, and one fourth of another sixth as the heir of her sister. So far as the rights of the infant Richard Woodhull are concerned, however, it is very material to ascertain whether his mother was entitled to one sixth of the estate as a lineal descendant from one of the heirs at law of her great grand mother. I have therefore examined the testimony with a view to ascertain that fact. It appears from the testimony that the lot in question, during the revolutionary war, was occupied and claimed by Richard Fletcher, the maternal uncle of Margaret Lent, who left the city of N. York, with his family, upon its evacuation by the British, in 1783. That the lot was then under a mortgage to J. Rosevelt, which mortgage was probably assigned to John Lent, at a subsequent time. That in the spring of 1783, when Fletcher was preparing to leave the city as a refugee, he put Margaret Lent into possession of the lot. That she went into possession claiming to be the owner ; and that she continued in the possession, by herself and her tenants, claiming to be such owner, until her death, in 1812. It also appears that her brother John, after he obtained an assignment of the Rosevelt mortgage, which was probably purchased by him for her benefit, gave her a conveyance of all his interest in the premises. Although the mother of Margaret Lent, and the other members of the family, went to reside with her in the fall of 1783, there is no evidence that any of them ever pretended to claim any interest in the premises, except the interest which John derived under the mortgage, until after the death of Margaret, in 1812. From the testimony, it appears to be somewhat doubtful whether any of the Lent family ever had an actual conveyance of the legal title, from the former owner of the lot.

But as Margaret went into possession in 1783, claiming title, and continued that possession for about thirty years, which was adverse to the whole world, she had, at the time of her death, acquired a valid title to the lot, which cannot now be disturbed. The decree in this case must, therefore, declare that Margaret Lent, at the time of her death, in 1812, was seised of the whole lot, in fee simple; and that it descended to her heirs at law, subject to the payment of her debts, especially the bond debt, and the several mortgages executed by her in her lifetime. The mortgages are specific liens, and the bond a general lien upon the premises.

Under the statute of descents of 1786, (1 *R. L. of* 1813, *p.* 52,) the estate of Margaret Lent descended to her surviving brother and *sister,* and to the several children of her deceased brother and sister; the children taking, by representation, the shares which would have belonged to their deceased parents, if living. But under that statute no representation was allowed among collaterals beyond brothers' and sisters' children. (*See Rev. note to* § 8 *of ch.* 2, *pt.* 2.) This principle of representation among the descendants of brothers and sisters, however, is changed by the revised statutes, so as to extend to all lineal descendants of a brother or sister, however remote. (1 *R. S.* 752, § 8, 9.) The decree must further declare that Ann Brewster, the grand niece of Margaret Lent, took nothing by descent from her, and that the infant defendant, Richard Woodhull, has, therefore, no interest in the premises.

Mrs. Hannan, under the will of her late husband, had a right to elect either to take her dower in his real estate, or to take the annuity and legacy given to her in lieu of dower. And if she has not already made such election by accepting the provision made for her by the will, she must now elect whether she will take the one or the other. If she elects to take her dower, the decree must declare that she is entitled to an estate, in fee simple, in two twelfths of the premises, and to an estate for life, as tenant in dower, in one third of the five twelfths of the premises which belonged to her husband at the time of his death.

The question then arises as to who is entitled to the residue of those five twelfths under the will of Alexander Han-

1834.

Hannan
v.
Osborn.

nan. The clause of the will which raises this question is as follows : " I give, devise and bequeath unto my sister Mary Ann Philips, wife of Thomas Philips, of the city of New-York, all the remainder of my estate, both real and personal : To have and to hold the same to her and her children, forever. But in case my said sister Mary Ann shall die, and all her children shall die, leaving no children, then my will is, that this part of my estate shall then be divided among my brother and sisters ; to wit, brother John, and sisters Julianna Stone and Amelia Manchester." The testator died since the revised statutes went into operation ; and at the date of the will, and at the time of his death, his sister Mrs. Philips had one child only, Sarah H. Philips, one of the infant defendants in this cause.

The rule, that the intention of the testator, so far as it can legally be carried into effect, should govern in all devises of real estate, has always been acted upon by courts of justice ; except in two or three special cases, where technical rules of law have been permitted to defeat such intent. The revised statutes having abolished the rule in *Shelly's* case, which formed one of those exceptions, and having also restored the expressions, " die without issue," and " die without leaving issue," to their natural and obvious meaning, courts of justice are now left free to give such a construction to the language of a testator in his will, as to carry into effect his intention, so far as the same can be collected from the whole instrument ; provided such intention is not illegal. Indeed it is now expressly provided by statute that the intent of the party shall govern, as well in the construction of deeds of real estate, as of wills.

By the common law, a devise to a man and his children as an immediate gift to both, was held to be a devise to the parent and children jointly, or to give an estate tail to the father, according to circumstances. If there were children in existence at the time, it was held that they took jointly with the parent ; but if there were none, he took an estate tail by implication. If, however, it appeared from the will that the intention of the testator was, that the children should take the estate only by way of remainder after the death of the pa-

rent, then the children who were in existence at the death of the testator, as well as after born children, took the estate as purchasers, after the termination of the life estate of the parent. (*See Wilde's case*, 6 *Coke's Rep.* 17, *b.*) In the present case Mary Ann Philips does not take a joint estate with her daughter; for that certainly was not the intention of the testator. For, the devise is not to the mother and her children, immediately. It is a devise to the mother; to have and to hold the same to her and to her children. Evidently showing the intention of the testator that the children were not to take immediately, but only by way of remainder after the death of the mother. The term children, in the plural, when there was but one child in existence at the time of making the will, also shows that it was not the intention of the testator that the children should take immediately. The mother, therefore, takes an estate for life under this will; and her infant daughter takes a vested remainder in fee, which is subject to open, to let in after born children. As the limitation over to the brother and sisters of the testator was not to take effect until after the death of Mrs. Philips, and after the death of her children, who might be born many years after the death of the testator, that limitation over is void, as being too remote. (*See* 1 *R. S.* 723, § 14, 15, 16.) The same principles are applicable to the personal estate bequeathed to Mrs. Philips and to her children under this will. (1 *R. S.* 773, § 1, 2.) The decree must therefore declare the rights of these parties accordingly. The solicitor and guardians ad litem of the several parties who are adjudged to have no interest in the premises, must be paid their necessary costs, up to this time, out of the proceeds of the property, when sold. As the rights of these parties are now definitively settled, no further costs are to be allowed to them; and it will not be necessary to serve any further notices or papers upon them hereafter, except the notice to furnish their taxed bill of costs to the register, in conformity with the 183d rule of the court.

The proper parties are not before the court, to enable me to make a decree for an account and satisfaction, of the rents and profits of the premises which accrued previous to the death

of Alexander Hannan. It is charged in the bill that Catharine Raborg has occupied the premises since the first of May, 1820. But to do complete justice between all the parties interested in the premises, an account should be taken of the rents and profits from the death of Margaret Lent, in 1812. Such rents and profits, although they may form an equitable lien on the premises, as between tenants in common while they continue to hold the premises in common, yet they are a personal charge upon the individual receiving the same; and upon his death are payable primarily out of his personal estate. The share of each tenant in common is also a debt due to himself from the co-tenant who received the same; and does not pass to his grantee upon a sale of his interest in the premises. Neither does it go to his devisee, or heir at law, upon his death, but to his personal representative. So much of the bill as seeks an account of the rents and profits of the premises previous to the death of A. Hannan must be dismissed; but without prejudice to the rights of the several parties who are entitled to such rents and profits, or their personal representatives, in any future litigation respecting the same.

The master is to take an account of the rents and profits of the premises received by any of the present parties to this suit, since the death of Alexander Hannan. And in taking such account, he is to allow to such parties as an offset against the rents and profits received, any sums which may have been paid by them for taxes or assessments upon the premises, or for keeping the same in ordinary repair. The case of *Mumford* v. *Brown*, (6 *Cowen's Rep.* 475,) was decided upon a different principle. There one tenant in common was attempting to charge his co-tenant, in an action of assumpsit, upon an implied promise to pay for repairs which he had never authorized; and where, from the circumstances of the case, no such implication could arise. But when a mortgagee, or a tenant in common, in possession, is called upon to account for the rents and profits of the premises, he is chargeable with the net amount of such rents and profits only, after allowing for necessary reparations upon the premises, and the taxes and assessments charged thereon, which have been paid by

1834.

Hannan
v.
Osborn.

him out of such rents. (*Moore* v. *Cable*, 1 *John. Ch. Rep.* 385.) So in an action of trespass for mesne profits, the defendant may recoupe the damages to the value of the repairs which he has made on the premises. (*Murray* v. *Gouverneur*, 2 *John. Cas.* 441.)

The investigation respecting the title to the lot in question must necessarily have been gone into, for the purpose of ascertaining the rights of Richard Woodhull, the infant. There is, therefore, no sufficient reason for charging the expense of that investigation upon the share which now belongs to the devisees or Catharine Raborg. But as the complainants had set out the rights and interests of all the parties correctly in the bill, it would be inequitable to allow the representatives of Mrs. Raborg the extra costs which she made herself by her answer, as a charge against the fund to be raised on the sale of the lot. In the taxation of the costs, therefore, her solicitor must only be allowed such costs as he would have been entitled to, if she had suffered the bill to be taken as confessed.

It is evident that the property cannot be divided without great prejudice to the rights of the parties. It must, therefore be referred to a master residing in New-York, to inquire as to specific liens upon the undivided shares of the several parties, and to give the usual notice to persons having general liens, to come in and prove them before the master. The master must also compute the amount due to the personal representative of A. Hannan, deceased, for the principal and interest on the separate bond, and the several bonds and mortgages of Margaret Lent; and he must also ascertain and report whether either of the parties now before the court is such personal representative. He must also take an account between the parties as to the rents and profits of the premises since the death of A. Hannan, upon the principles above stated. And all further questions and directions are to be reserved until the coming in and confirmation of the master's report; when the complainants are to be at liberty to bring the cause on, upon any regular motion day, or in term, for the usual decree for a sale of the premises and a distribution of the proceeds.