## NIMMO *vs.* STEWART.*

1. The general rule is, that if a devise be to one and his children, and he has children at the date of the will and at the death of the testator, the parent and children living at the testator's death take jointly under the will, if there is nothing in the will from which it can be inferred that the testator intended the interest of the children to be postponed until after the death of their parent.

2. *It seems,* that the rule is the same, if there are no children at the date of the will, but some are afterwards born and in life at the testator's death.

3. A bequest was in these words, viz: "I commit to my three sons, (naming them,) as trustees for my daughter Rhoda and her children, during her, the said Rhoda's, natural life, the ten following negroes," &c., "and my will and desire is, that the profits arising from the aforesaid property, either by hiring or otherwise, shall be applied to the benefit of the said Rhoda and her children; and after the decease of my said daughter Rhoda, my desire is, that what I have left her upon trust shall be equally divided between the heirs of her body, share and share alike, to them and their heirs forever." *Held:* That the children of Rhoda took an immediate and joint interest with their mother on the testator's death.

4. Courts of equity, acting upon the analogy of the statute of limitations, and in imitation of the courts of law, will refuse relief if the legal title would have been barred at law.

5. Where the legal title would be barred by six years' adverse possession, the same rule must be applied when a complainant comes into equity upon an equitable title, disconnected from a trust as between him and the defendant.

6. When the bill shows upon its face that complainant's remedy is barred by the statute of limitations, the benefit of the statute can be invoked by a general demurrer.

ERROR to the Chancery Court of Madison.

Heard before the Hon. D. G. LIGON.

The original bill in this case was filed by James F. Nimmo in his own right against Thomas Stewart, John Thompson, James Nimmo, the father, and Rhoda Nimmo, the mother of complainant, and also against Elizabeth Davis, his sister. Thomas Stewart and John Thompson were the only resident defendants; the others resided in Texas, as to whom publication was made.

The bill alleges, that Samuel Hamner, of Virginia, the

---

* The opinion in this case was prepared by the late Chief Justice, but was not delivered as the opinion of the court until after his resignation.

REPORTER.

father of Rhoda Nimmo, on the first day of April, 1817, made and published his last will in writing, and soon afterwards departed this life; that on the 7th day of July, 1817, said will was duly admitted to probate in the County Court of Albemarle, and ordered to be recorded, which was done accordingly; that by a clause in said will the testator made a bequest in the following words: "I commit to the care of William Hamner, Morris Hamner and Samuel Hamner, as trustees for my daughter, Rhoda Nimmo, and her children, during her, the said Rhoda Nimmo's, natural life, the ten following negroes, to-wit: Nanny, Charlotte, Patty, Ben, Clarissa, Betsey, Jenny, Madison, George and Moses; likewise four beds and furniture, to which I now add one hundred and forty dollars, to be paid out of my estate; and my will and desire is, that the profits arising from the aforesaid property, either by hiring or otherwise, shall be applied to the benefit of the said Rhoda Nimmo and her children; and after the decease of my said daughter Rhoda, my desire is, that what I have left her upon trust shall be equally divided between the heirs of her body, share and share alike, to them and their heirs forever. It is also my wish and desire, that if James Nimmo outlives his wife Rhoda, that the trustees should furnish him, the said James Nimmo, with a reasonable support, should he be in need of it, out of my estate lent on trust."

The bill also avers, that at the time of the execution of said will the said Rhoda Nimmo had the following children, the issue of the marriage of said James and Rhoda Nimmo, to-wit: Robert, Samuel, James F., the complainant, William, Henry and Elizabeth; that shortly after the death of the testator the said Rhoda had another child, called Mary Jane, and afterwards another, which, however, died within a few months after its birth; that Robert died in 1819, without wife or child, and that Samuel, William and Henry died in 1835 in Texas, and that Mary Jane died in 1837 in the State of Texas, and was the wife of Leroy Davis; that complainant and Elizabeth are the only children now surviving of the said Rhoda, and that said Elizabeth is the widow of Hiram Davis; that the trustees appointed by the will of the testator all died in Virginia previous to the year 1821.

The bill also alleges, that Charlotte, one of the slaves bequeathed by the testator, in the foregoing clause, together with her five children, all of whom were born after the death of the testator, was now in the possession of Thomas Stewart and John Thompson, his son-in-law; that Thomas Stewart became possessed of Charlotte and such of her children as were then born, in the year 1835, under some transfer from said William Nimmo, and from that time he has had the use and possession of Charlotte and her children until 1846, when he put Charlotte and three of her children in the possession of Thompson, his son-in-law, and retained the possession of Calvin and Lucinda himself; that before said Stewart became possessed of said slaves he knew or had heard of the true nature of the title, and that Thompson also knew and heard of the nature of the title before he received the possession of Charlotte and her children.

The bill also alleges, that the father of the complainant and some of his brothers conveyed away some of the negroes in the State of Tennessee, and that the complainant and his sisters had recovered of the purchasers their proportionate share of said negroes thus conveyed; that Ben, one of the slaves named in the will, is now in the possession of complainant, and that, except Ben and his interest in the two slaves sold in Tennessee, he has received nothing from the slaves bequeathed; that there has been considerable increase in the number of said slaves, but some have been sold and carried off, and some are in the possession of the father and mother of complainant in the State of Texas, and others in the possession of his surviving sister; but that none of the negroes are in the State of Alabama except Ben and Charlotte; Ben, who is in the possession of the complainant, and Charlotte and her children, who are in possession of Thomas Stewart and John Thompson as stated.

The prayer of the bill is, that an account be taken of the said negroes and of their use and hire, and that the complainant recover his just proportion or interest in the same.

The bill was amended, and in the amended bill it is alleged, that Samuel Nimmo sold his interest in the slaves bequeathed by said testator to William Nimmo some time before the year 1830, and that William sold his interest afterwards,

which then consisted of two shares, to the complainant. The transfer to the complainant was made in August, 1830; that neither the said Samuel nor William ever received any portion of said slaves. The bill also alleges, that the complainant is the administrator of Robert, Henry, Mary Jane and Rhoda Ann, the latter being the infant that died a few months after she was born, and whose name was not given in the original bill; that Hiram Davis, who had married one of the daughters, had died about two years previous to the filing of the bill, and that the complainant was his administrator; and in the amended bill the complainant claims three shares in his own right, and also the shares of all his brothers, sisters, and of Hiram Davis, upon whose estate he had procured letters of administration to be granted to him.

The defendant, Thomas Stewart, insists on several defences, amongst which are, that the slaves bequeathed by the will had been divided between Mrs. Nimmo and her children, then in life, and the respective share of each allotted to him, and that the complainant had received his share; that he purchased Charlotte, who at the time had but one child; that he bought said negroes from James Nimmo and Rhoda, his wife, and that several of the children joined in the conveyance; that he paid a full price, and has had the quiet possession of them ever since. He concludes his answer with a general demurrer to the bill. Thompson answers, that he has possession of Charlotte and three of her children by way of loan from Stewart, but asserts no title in himself except as the bailee of Stewart.

Thomas Stewart died, and the bill was revived against his executor, William Stewart, who in his answer to the bill of revivor answered the original bill, and amongst other grounds of defence he insists upon the lapse of time and the statute of limitations. James and Rhoda Nimmo, the father and mother of complainant, also died, and the suit was revived against their executors.

There was evidence taken on both sides, but the view taken of the case by the court renders it unnecessary to notice it. The Chancellor dismissed the bill, on the ground that the will gave to Rhoda Nimmo a life estate in the slaves, exclusive of her children; and the remainder, after her death, to

her children, and as the bill was not filed to protect the ulti-
mate interest of the complainant, it could not be sustained.
From this decree a writ of error is brought to this court, and
the decree of the Chancellor is assigned for error.

BRICKELL & CABANISS and J. W. SHEPHERD, for plaintiff
in error:

I. The will does not create an estate-tail in Rhoda Nimmo,
1. Because, (in the language of the decree,) in the same
clause of the will in which the words "heirs of her body"
are employed, the term "children" twice occurs, in evident
reference to the same class, and must be taken to limit and
define the more general term, "heirs of her body. These
latter words, taken in this sense, must be considered words of
purchase, and not of limitation. The intention of the testator
is obvious, and it must govern. Woodley v. Findlay et al.,
9 Ala., 716; Fellows, Wadsworth & Co. v. Tann, ib. 1003, 2.
Because Mrs. Nimmo's interest is an *equitable* life estate, and
the remainder is a *legal* estate; and the two estates cannot be
consolidated into an estate-tail in her. The remainder and
the life estate cannot unite, unless they are both of the same
quality; both must be legal, or both equitable. A bequest
to trustees, for the use of A during her life, and at her
death to be divided among the heirs of her body, gives A
only an equitable life estate; because, during her life, the le-
gal estate is in the trustees, while on her death her children
take the legal estate in themselves. Trustees are usually in-
terposed in such case, when the first taker is a feme covert,
to prevent the marital rights of the husband from attaching.
On the death of the wife, there is no longer any necessity for
the trustees, and the children take the legal estate in them-
selves. Fearne on Remanders, 52 to 60; 2 Jarman on Wills,
244.

II. Nor do the children take contingent remainders. Their
interest does not depend upon their surviving their mother.
Those children who were living at the testator's death took
an immediate vested interest in their shares, subject to dim-
inution *pro tanto* by the birth of other children subsequent-
ly. Those children who were born after the testator's death
became entitled to an equal share with the others. The

shares of those who died during their mother's life descended to their administrators. 2 Jarman on Wills, 74, 75; Right d. Shortridge v. Creber, 12 En. C. L. R., 392; Fellows, Wadsworth & Co. v. Tann, 9 Ala., 1003.

III. The children, during the life of their mother, take a joint interest with her in the profits. The trust is "for Rhoda Nimmo and her children;" the profits are to be applied "to the benefit of the said Rhoda and her children." If the will creates "a trust in favor of Rhoda and her children," as the Chancellor admits, a court of equity will certainly protect the *cestuis que trust*, and will not permit one of them to defeat the rights of the others, by a sale of the entire estate. 2 Jarman on Wills, 74, 75.

IV. As to the plea of the statute of limitations: 1. It is no bar, because the death of the trustees, in whom the legal estate was vested, is alleged and proved to have occurred long before the sale to Stewart. There was no person *in esse*, at the time of the sale, who could sue for the negroes, and, of course, no one against whom the statute could begin to run. The statute bars only the legal estate and the legal owner. Peck's R., 321. In this case, there was no legal remedy whatever. It is true, that courts of equity sometimes act in analogy to the statute, in cases to which it does not strictly apply; but the statute certainly cannot bar *cestuis que trust* of their remedy in equity, when it has never begun to run against the trustee at law.

2. But even if the statute would be a complete bar if proply pleaded, yet William Stewart, *as executor*, has no right to plead it in this case. His testator, the original defendant, might have interposed the plea; by not doing so, he waived the benefit of it. The executor, in his answer to a bill of revivor, cannot set up a new defence, and especially one that his testator has waived. "Upon a bill of revivor, the sole questions before the court are, the competency of the parties, and the correctness of the frame of the bill to revive." Bettes v. Dana, 2 Sumner, 383; 1 Smith's Ch. Pr., 519. "Where the deceased has answered, his representative in legal contemplation must notice the answer and be bound by it. He must take up the defence at the point where he finds it, on the death of the person through whom he claims; and if the cause

is at issue, or ready for hearing, the representative has nothing more to do, than to arrange the trial or hearing. As respects the representative, there seem to be but two points of defence; first, not possessing the character ascribed to him; and secondly, possessing no interest in the subject matter of the suit." Lewis & Lenoir v. Outlaw, 1 Tenn. R., 143. When an answer is required to a bill of revivor, it must be confined to such matters as are called for by the bill, or would be material to the defence with reference to the order made upon it. Upon this ground it has been held, that where a defendant to a bill of revivor inserted in his answer a variety of matters, which, if stated in answer to the original bill, would have been a good defence to that bill, but was not relevant to the question of revivor, the answer was to that extent impertinent. 3 Dan. Ch. Pr., 1711. Impertinent, irrelevant matters cannot affect the decree to be rendered, even if not objected to.

JAMES ROBINSON, *contra :*

The bill cannot be sustained as a bill *quia timet.* It proceeds upon the single idea, that Rhoda's children took a joint interest with their mother during her life, and that they wanted to obtain this immediately. Land and wife v. Cowan et al., 19 Ala. 298.

The trustees elected to give to Rhoda and her husband the possession and use of the trust property. After such election, she could hold against them. Lenoir v. Rainey, 15 Ala. 670. If she could hold against the trustees, she could clearly hold the property against her children, unless the will gave them the right to the immediate possession. So long as the trustees continued to act, the property was to be employed by them, and the children could not deprive them of their possession and control. By their surrender of the possession to Rhoda, the trustees also surrendered to her their power and discretion; and if the children could not take the possession from the trustees, neither can they take it from her. The testator says: " After the death of my daughter, *what I have left her* in trust shall be equally divided," &c.; by this he does not intend to make her a trustee, but evidently refers to the trust which he had already created for her benefit, declaring ex-

pressly that he had already given the property to her. If the children take any specific interest during their mother's life, they must take either as joint tenants or tenants in common; and taking as either, any one of them would have the right to have his share ascertained and set apart for him, and then to take immediate possession of it; so that the first child who came into being could have had a division with his mother. Fellows, Wadsworth & Co. v. Tann, 9 Ala. 1004; McCroan v. Pope, 17 ib. 615. If the children took no specific interest during their mother's life, then it is clear that this suit was commenced too soon.

But if the court should hold, that the children took a specific interest in the property during their mother's life, then they are barred by the statute of limitations of six years, which is pleaded by the executor. They had the same right to sue in 1835, when Stewart acquired the possession, that they had in 1846, at the time of filing their bill. Neither the pleadings nor proof show the occurrence of any fact during the intermediate period, which at all changed or affected their right to sue. It is said, that Stewart as executor cannot plead the statute, because his testator failed to plead it. If this objection can prevail at all, the utmost that can be made of it is, that for this cause the answer was impertinent; and being impertinent, the correct practice was, to have it referred for that cause. This the complainant failed to do, but took his order of revivor, and proceeded to take all his proof, thus admitting that the answer was full and perfect, and waiving all objections to it. 3 Dan. Ch. Pr. 1712. Even if he had filed exceptions, and, without the action of the court thereon, had proceeded to take his proof, this would have been a waiver of the exceptions. Story's Eq. Pl. 665, § 867.

As no words of exclusion are used in the will, the marital rights of the husband attached to whatever rights the wife derived from the will. Did she take an estate for life, or an absolute estate? Courts uniformly hold, that words used in a will must be construed to have their strict technical meaning, unless the will shows that the testator used them in a different sense. The words "heirs of the body," in this will, must have their strict technical meaning, unless the will shows a different intention. There is nothing in the will to connect

these words with the term "children;" nothing to show that the testator did not comprehend the technical meaning of each term; nothing to show that he confounded them. If a testator uses a legal term in one part of a clause, and another term in another part, does it follow that he intended to convey the same meaning by the two terms? If the clause had given an interest to the "children" of Rhoda during her life, and at her death another interest to "the heirs of the body" of another person, the two terms could not possibly be confounded, or construed to mean the same thing; and there is no reason why a different construction should be adopted, when the two different interests are given to the "children" and "heirs of the body" of the same person. If any effect can be given to the word "children," the utmost is, that by it the testator intended to point out the particular persons who were to take a benefit in the profits during his daughter's life; and by the term "heirs of her body," he intended to point out the class of persons who were to take after her death. But no effect can be given to the word "children," because it was used by testator for the sole purpose of showing the motive which induced him to make the bequest. McCroan v. Pope, 17 Ala. 617. If the words "heirs of her body" are construed to have their strict technical meaning, as they certainly must be, then Rhoda took the whole estate; and of course, if she took it, her husband took it. Price v. Price, 5 Ala. 580; Darden's Adm'r v. Burns' Adm'r, 6 ib. 362; 9 Ala. 1003; 15 ib. 375; ib. 669; Fearne on Remainders, 262–3. The intervention of trustees cannot prevent this result; for preservation implies existence, and an estate cannot be preserved if it has no existence. Lenoir v. Rainey, 15 Ala. 669.

DARGAN, C. J.—I fully agree with the Chancellor, that the bill asserts a present interest in the slaves, and is not one to protect a future interest or a remainder, after the death of Mrs. Nimmo, the mother of the complainant. But I think the Chancellor was mistaken in holding, that the will gave to Mrs. Nimmo an exclusive life-estate in the slaves, with a remainder after her death to her children. The general rule is, that, if a devise be to one and his children, and he has children at the date of the will and the death of the testator,

the parent and children living at the testator's death take jointly under the will. This was resolved in Wilde's case, 3 Coke, part 6, 17, and has been steadily adhered to ever since. See the cases collected in 2 Jarman on Wills, 307 to 317. The decisions of this court recognize the same rule. McCroan, Trustee v. Pope et al., 17 Ala. 612 ; Fellows, Wadsworth & Co. v. Tann, 9 Ala. 1003; also, 1 Sumner, 359; 15 Pick. 104.

It is true, the intention is to govern; but when the devise is general, to one and to his children, and there is nothing in the will from which it can be inferred that the interest of the children is to be postponed until after the death of the parent, they must all take jointly upon the death of the testator; for no other intent can be inferred from a bequest to one and his children, when there are children both at the date of the will and at the death of the testator. Nor should I think the case would be altered, if there were no children at the date of the will, but some had been born afterwards and were in life at the testator's death. 2 Jarman on Wills, 311; 2 Atk. 220. But in this case, there were children both at the date of the will and the death of the testator, and there is nothing contained in the will from which we can infer that the testator intended to postpone the interest of the children until the death of their mother. They, therefore, all took an immediate and a joint interest.

But, notwithstanding this is the character of their interest, I am very clearly of the opinion, that the bill was properly dismissed; for it is shown, not only by the answer and proof, but by the bill itself, that Thomas Stewart had been in the quiet and undisturbed possession of the slaves for about twelve years before this bill was filed; that is, he acquired Charlotte and her then only child in the year 1834, and has retained her ever since, and her other children were born in his possession. This delay, in my opinion, is fatal to the bill; for there has been no legal impediment to its being filed at any time since the defendant Stewart acquired the possession of the slaves.

It may be, that our statute of limitations does not, in express words, embrace bills in equity, or mere equitable demands; yet it is settled beyond controversy, that courts of equity, acting upon the analogy of the statute, and in imita-

tion of courts of law, will refuse relief if the legal title would have been barred at law. Thus, a mortgagor cannot redeem after twenty years adverse possession by the mortgagee, unless something has been done during the time that will waive the bar, or prevent its application. Kane v. Bloodgood, 7 Johns. 90; Hovenden v. Lord Annesley, 2 Sch. & Lef. 607; Johnson v. Johnson, 5 Ala. 90, and cases cited in the opinion.

There are exceptions to this rule, or rather supposed exceptions; I mean in cases of continuing trusts, which are not affected by the statute, or by length of time, so long as they are admitted or acted upon as trusts. But even those must fall within the influence of the statute, if the trust has been denied and repudiated, and the *cestui que trust* permits his trustee to retain possession, after he has acquired a knowledge of the disavowal of the trust, a sufficient time to create a bar to his title had it been a legal one. Kane v. Bloodgood, *supra*.

But, in the case before us, the relation of trustee and *cestui que trust* never existed between the defendant Stewart and the complainant. Stewart acquired the slaves and held them as his own, and the title of the complainant was a mere equitable one, the legal title being in the trustees appointed by the will of the testator; and to hold that the statute did not apply to the equitable title, would be to exempt all equitable titles from its influence. Six years adverse possession would have barred the legal title, and the same rule must be applied when a complainant comes into a court of equity upon an equitable title, disconnected from a trust, as between him and the defendant. I, therefore, think, that, though the complainant took an immediate interest under the will of his grandfather, still he is barred by lapse of time of his remedy, and that the bill was properly dismissed.

It is, however, contended, that the defendant Stewart did not insist upon the statute of limitations in his answer, and that his executor could not set it up in his answer to the bill of revivor; because he was not required to answer the original bill, which had been answered by his testator, and could only put in issue matter going to the propriety of reviving the suit. To this it is answered, that no exception was taken to the answer of the executor, and for this reason, every

thing was in issue presented as a bar to relief by his answer. But I think it unnecessary to examine this question of practice, for the answer of Thomas Stewart contains a general demurrer to the bill, and that upon its face shows that the remedy is barred; and the benefit can in such a case be as well invoked by a demurrer as by a plea. Story's Equity Pl. § 503; Humbert et al. v. The Rector &c. of the Trinity Church, 7 Paige, 195; Dunlap v. Gibbs, 4 Yerger, 94; Tyson v. Poole, 3 Younge & Coll. 266; Hoare v. Peck, 6 Simons, 51. The rule as now settled is, that if the objection appears upon the bill itself, it may be taken advantage of by demurrer; but if the bill does not show that the remedy is barred by lapse of time, then the defendant must insist upon it either in his answer or by plea. The bill before us was filed in the year 1846, and it shows that the defendant came into possession of the slaves by a transfer to him in the year 1835, and has retained possession ever since. It therefore shows, that lapse of time is a bar to the relief sought.

Let the decree be affirmed.