No. 9755.

## Biggs et al. *v.* McCarty.

**Will.**—*Construction.—Descents.—Tenants in Common.*—A testator, contemplating a trip, made his will in 1849, devising certain real estate to his daughter "A. and her children," A. then having one child alive, which died in December, 1850. She had another, born November 20th, 1851, which died when three days old, and she afterwards had other children. The testator started on his trip in January, 1850, and on the 15th of November, 1851, on information of his death, the will was probated, but the date of his death was never ascertained.

*Held,* that it might be fairly inferred that the testator died while the second child was *in ventre sa mere,* and that A. and that child then took under the will as tenants in common, and the estate thus vested did not open to admit the children of A. born afterwards.

*Held,* also, that upon the death of said second child its moiety passed to its parents.

Biggs *et al. v.* McCarty.

STATUTE OF LIMITATIONS.—*Demurrer.*—*Practice.*—The purchaser of lands from heirs can not invoke the statute of limitations, R. S. 1881, section 2575, by demurrer to a complaint for their recovery, unless the complaint shows that the case is not within any of the exceptions to the statute.

From the Shelby Circuit Court.

*A. Major* and *S. Major,* for appellants.

*B. F. Love* and *H. C. Morrison,* for appellee.

MORRIS, C.—The appellants, Sanford A. Biggs, Earnest F. Biggs, John V. Biggs, Nannie L. Biggs and Enoch H. Pitts, who were the plaintiffs below, allege in their complaint that Henry Stuck, of Boone county, Kentucky, contemplating a trip to California, on the 10th day of December, 1849, made his last will and testament, devising to two of his daughters and his wife his real estate in Kentucky, in fee simple, and devising his real estate in Shelby county, Indiana, to his daughter Angeline Biggs and her children; a part of which is in controversy in this suit. The testator left Boone county, Kentucky, for California, in January, 1850, and has not since been heard from; that, at the time the will was made, Mrs. Biggs had a child living, born November 10th, 1849; she had another child born November 20th, 1851, which died November 23d, 1851. The will, upon information of the testator's death, was probated in Boone county, Kentucky, on the 15th of November, 1851; that afterwards, on the 23d day of April, 1881, the plaintiffs applied to the Shelby Circuit Court, by petition in writing, and filed therewith a duly certified copy of said will and the probate thereof, asking said court to receive the same and to order the clerk of said court to file and record the same in the record of wills, as required by law; that said will and the probate thereof were received by said court, and the clerk of said court was duly ordered to file and record the same as aforesaid, which was done; that, at the time of the making of said will, the said Angeline Biggs was the wife of Perry D. Biggs, then of Boone county, Kentucky; that she had by him the following named children, to

VOL. 86.—23

wit: Earnest L. Biggs, born November 10th, 1849, who died December 4th, 1850; Cora Adelaide Biggs, born November 20th, 1851, died November 23d, 1851; a son, born in November, 1852, who died the same day; Harriet A. Biggs, born May 14th, 1856; Charles H. Biggs, born November 9th, 1858, who died July 31st, 1873; Earnest F. Biggs, born August 13th, 1861; John V. Biggs, born September 12th, 1863, and Nannie L. Biggs, born March 10th, 1868; that the said Harriet A. Biggs intermarried with Enoch H. Pitts, September 30th, 1869, and died intestate in 1880, leaving no child or descendant of a child her surviving, but leaving her husband, Enoch H. Pitts, and the plaintiffs, surviving her; that the said Angeline Biggs, the mother of the plaintiffs, died intestate in July, 1877, at the county of Randolph, in the State of Missouri, leaving the plaintiffs and the said Harriet A. Pitts, her only children, her surviving.

It is then alleged that on the 21st day of December, 1858, the said Angeline Biggs and Perry D. Biggs, her husband, sold and conveyed to Shelley Stafford the land in controvers which is part of the land devised by said testator to the said Angeline Biggs; that the same had been by the grantees of said Stafford conveyed to the defendant, who claims to be the owner of the same. It is also alleged that the said Angeline Biggs, under said will, took but a life-estate in the lands devised to her and to her children, or that she and her said children held said lands as tenants in common in fee simple; that said will of said Stuck has not been probated in any court in said county of Shelby, nor was there any certified copy of said will, and the probate thereof, recorded in the record of wills in said county of Shelby, until the same was recorded under the order of said Shelby Circuit Court, as above stated; that the appellee has been in possession of said land since 1870, receiving the rents and profits of the same, which are of the value of $3,000. The plaintiffs pray that the court will settle and determine the rights of the plaintiffs and defendant in and to said lands, taking an account of the profits thereof, and

order partition, etc. A copy of the will was filed with, and is made a part of, said complaint, as is also the petition of the appellants, filed in the Shelby Circuit Court, and the proceedings of said court thereon.

The appellee demurred to the complaint for the want of sufficient facts. The court sustained the demurrer, and the appellants electing to stand by their complaint, final judgment was rendered for the appellee. The sustaining of the demurrer to the complaint is the only error assigned. The appellee insists that, upon the facts stated in the complaint, he is, as against Enoch H. Pitts and Sanford Biggs, entitled, as an innocent purchaser, to the protection of section 17 of the act of May 31st, 1852, in relation to wills. 2 R. S. 1876, p. 574. The section provides that "The title of any lands or interest therein, purchased in good faith and for a valuable consideration from the heirs at law of any person who shall have died seized of real estate, shall not be impaired by virtue of any devise made by such person of the real estate purchased, unless the will or codicil containing such devise shall have been fully proved, and recorded in the office of the clerk of the court having jurisdiction, within three years after the death of the testator, except:

"*First.* Where the devisee shall have been within the age of twenty-one years, of unsound mind, imprisoned, or out of the State at the death of such testator; or,

"*Second.* Where it shall appear that the existence of such will or codicil shall have been concealed from, or unknown to such devisee.

"In which cases, the limitation specified in this section shall not commence until after the expiration of one year from the time such disability shall have been removed or such will or codicil shall have come into the control of such devisee or his representative, or have been deposited in the clerk's office of the proper court of common pleas."

It appears in the complaint that Angeline Biggs and her husband were married in Kentucky, and that she died in

Missouri.   It is not alleged, nor does it appear from the complaint, that she ever resided in the State of Indiana; nor does it appear from the complaint that any of the appellants resided in this State at any time.   For anything that appears in the complaint, the appellants may have resided out of the State until the commencement of this suit, and their mother may have lived out of the State until her death, which is alleged to have occurred in 1877.   If they thus lived out of the State, the statute did not run against them.

Assuming that the statute referred to applies as well to foreign as to domestic wills, a question which we do not decide, the objection to the complaint is not well taken.   Unless the complaint shows upon its face that the appellants are not within any of the exceptions contained in the 17th section, the appellee must, in order to avail himself of its benefits, plead the limitation.   *Milner* v. *Hyland,* 77 Ind. 458; *Harlen* v. *Watson,* 63 Ind. 143.   In such case the question can not be raised by demurrer.   Nor is there anything in the case of *Pitts* v. *Melser,* 72 Ind. 469, affecting this question, nor any of the questions presented by the appellants in this case.

The appellants insist—

*First.* That Angeline Biggs took a life-estate in the land devised to her and her children, and that, upon her death, her children then alive took, by way of executory devise, the remainder in fee as tenants in common, whether born before or after the testator's death, and whether he died after the death of the first child, who died Dec. 4th, 1850, and before the quickening of the second, born Nov. 20th, 1851, or died during the existence of the first or second child; or,

*Second.* If the testator died while the child that was alive when the will was made existed, or if he died while the child born Nov. 20th, 1851, was *in ventre sa mere,* then Mrs. Biggs and her children alive at the testator's death took as tenants in common the land in fee, which opened up from time to time, to let in after-born children.

In support of the first proposition, the appellants cite the

following cases and authorities:  *Carr* v. *Estill,* 16 B. Mon.
309;  *Goss* v. *Eberhart,* 29 Ga. 545;  *Sisson* v. *Seabury,* 1 Sum.
235;  1 Hill. Real Prop. 630, note;  4 Kent Com. 221, note
to 225;  *Webb* v. *Holmes,* 3 B. Mon. 404;  *Hatfield* v. *Sohier,*
114 Mass. 48;  *Hannan* v. *Osborn,* 4 Paige, 336;  *Borden* v.
*Kingsbury,* 2 Root, 39;  *Righter* v. *Forrester,* 1 Bush, 278;
*Coursey* v. *Davis,* 46 Pa. St. 25;  *Mitchell* v. *Long,* 80 Pa. St.
516;  *Jennings* v. *Parker,* 24 Ga. 621;  1 Hill. Real Prop. 512,
519, 630, note.

In the first case cited from 16 B. Monroe, the devise was to
" Mary Baker Didlake and her children." Mary B. Didlake
had no child, and was an unmarried infant at the time the testa-
tor made his will and at the time he died. She afterwards mar-
ried a Mr. Carr, and had by him one child. She and her
husband sold and conveyed the land in fee simple to Estill.
Her child afterwards sued for the land and recovered it. The
court, rejecting the resolution in the Wild case, held that
Mary B. Didlake took a life-estate in the land devised, and that
her child took the remainder in fee. The court concluded
that as there was no child *in esse* at the time the devise was
made who could take jointly with the mother, according to
the literal import of the devise, the intent of the testator was
to give to the mother a life-estate. It was argued by the court
that, as the testator must have regarded the children of his
daughter as the objects of his bounty, and knowing at the time
that his daughter then had no children, he must have intended
to provide for such future children as she might have. With-
out questioning the correctness of the inference thus drawn
by the court, it is obvious that no such inference could obtain
in the case in hearing. For, in this case, Mrs. Biggs had a
child living at the time the devise was made, who could have
taken jointly with her had it survived the testator. Besides,
the construction adopted by the court in the Didlake case was
not in accordance with the law of Indiana, where the resolu-
tion in the Wild case is held to be a part of the common law
in force here.

In the case of *Sisson* v. *Seabury*, 1 Sumner, 235, the devise was in these words:

" I give and bequeath to my loving grandson, Philip Sisson, all my homestead farm and housing thereon standing, lying part in said Tiverton and part in the township of Dartmouth, in the Province of Massachusetts Bay, with all my other lands, and salt meadows, and sedge flats in said Dartmouth, to him, my said grandson Philip Sisson, and to his male children lawfully begotten of his body, and their heirs forever, to be equally divided amongst them and their heirs forever."

The testator died in 1777, leaving his said grandson, then eleven years old, unmarried and without children. After the death of the testator, Philip took possession of the lands, and on the 29th of March, 1814, conveyed the same to Seabury. Philip died in 1817, and after his death one of his children brought this action to recover the lands from Seabury, claiming title under the will of Thomas Sisson, on the ground that said Philip took but a life-estate therein. The question was whether the devise created an estate tail in Philip Sisson, or an estate for life only, with a contingent remainder in fee in his male children. From the last clause of the devise, to wit: "And to his male children lawfully begotten of his body, and their heirs forever, to be equally divided amongst them and their heirs forever," Judge STORY held that Philip took a life-estate with a contingent remainder in favor of his male children. It was argued that in this way alone could the lands be equally divided amongst the male children lawfully begotten of his body and their heirs forever. Judge STORY says: " The first part of the clause is, ' I give and bequeath unto my loving grandson, Philip Sisson, etc., and to his male children lawfully begotten of his body,' etc. If the will had stopped here, there could not have been a doubt, either upon principle or authority, that it was the intention of the testator to create an estate in tail male in the devisee. In the first place, the words import a devise *in presenti*, and as the devisee had no children at the time of the will, if we construe the words,

'his heirs male,' etc., as words of purchase and a *designatio personarum in presenti,* the devise becomes utterly void, from the want of proper objects *in esse* to take; so that the intention of the testator is defeated. * * * This is exactly in conformity to one of the resolutions in *Wild's* case, (6 Co. R. 17). Now, *Wild's* case has constantly been admitted to be good law; and relied on in many subsequent cases."

It was held in *Wild's* case that a devise to one and his children should carry an estate in joint tenancy, when the person named had children living at the date of the will; but that when no such children existed, the term "children" should be construed as a word of limitation, and as equivalent to issue of his body, thus creating an estate-tail general as to real estate. It would seem, therefore, that according to the reasoning of Judge STORY in the case of *Sisson* v. *Seabury,* cited and relied upon by the appellants, and the resolution in the *Wild's* case, the case of *Carr* v. *Estill, supra,* was not well decided. We think neither of the cases supports the first proposition insisted upon by the appellants.

In the case of *Webb* v. *Holmes, supra,* a conveyance, made by Henry Crist and Rachel, his wife, to their daughter, Sarah Thomas, read thus: "This indenture, made and entered into this 25th day of July, 1812, between Henry Crist and Rachel his wife, of Bullitt county and Commonwealth of Kentucky, of the one part, and Francis and Sarah Thomas of the same place, of the other part, witnesseth, that for the love and good-will for them and their children, that intending to convey to Sarah Thomas a certain *dower* in lands, for the entire benefit of her and his children, do hereby, and by these presents, transfer, set over, and convey to her and her children forever, all that certain tract," etc., "containing," etc., "which said tract of land, with all and singular its appurtenances thereunto belonging, we do hereby transfer and convey to said Sarah Thomas and her children forever," etc.

Sarah Thomas had four children alive at the date of the deed, and four were born after the making of the deed and be-

fore the death of her husband. The court held that Sarah took a life-estate in the land conveyed, and that all her children took the remainder in fee. The court seem to lay some stress on the word " dower" as used in the conveyance. Unless the decision turned upon the use of the word "dower," the case is in direct conflict with that of *King* v. *Rea*, 56 Ind. 1, and can not be regarded as authority in this State.

In the case of *Hatfield* v. *Sohier*, 114 Mass. 48, the testatrix, Mrs. Coleman, devised to her daughter, Mrs. Hatfield, to her sole and separate use, free from the interference of her husband or any other person, to have and to hold the same to her sole and separate use as aforesaid, and to her children or child, or the issue of any deceased child, in equal proportions. Mrs. Hatfield had two children at the date of the will, and afterwards by a second husband had two other children. Of this devise the court say : " It is not to Mrs. Hatfield, her heirs and assigns, and contains no words extending her interest beyond her life. There are no terms used indicating an intention to give her the power of disposal during her life. The devise ' to the children or child of the said Louisa or the issue of any deceased child in equal proportions,' is inconsistent with an intention to give Mrs. Hatfield a fee or an estate in tail. These are words of purchase, and are of no effect if she took an estate of inheritance with the power of disposal. We think the intention of the testatrix was to give Mrs. Hatfield an estate for life, and the remainder to her children." The court held that the remainder opened to let in children born after the death of the testatrix.

This case differs from that before us in several respects. The devise gave the property to Mrs. Hatfield exclusively for the period for which she was entitled to hold it. Its terms did not create in her anything more than a life-estate. There was a clearly expressed purpose to give an estate to the child or children. They must take in remainder or not at all. The construction adopted was the only one by which the intention of the testator could be maintained. By section 5 of the act

of 1843 (R. S. 1843, p. 485), which was in force at the time the will of Henry Stuck was made and at his death, it is provided that " Every devise of lands shall be construed to convey all the estate of the devisor therein, which he could lawfully devise, unless it shall manifestly appear by the will that the devisor intended to convey a less estate." Had the appellants been in existence at the time of the testator's death, it would hardly be pretended that they and their mother would not have taken the land in controversy in fee as tenants in common ; and in this it differs from the case just cited.

The case of *Hannan* v. *Osborn*, 4 Paige, 336, is also cited and relied upon by the appellants. The devise in the will of Alexander Hannan was as follows : " I give, devise and bequeath unto my sister Mary Ann Philips, wife of Thomas Philips, of the city of New York, all the remainder of my estate, both real and personal : To have and to hold the same to her and her children, forever. But in case my said sister Mary Ann shall die, and all her children shall die, leaving no children, then my will is, that this part of my estate shall then be divided among my brother and sisters ; to wit, brother John, and sisters Julianna Stone and Amelia Manchester."

It was expressly provided in New York at the time, by statute, that the intent of the party shall govern, as well in the construction of deeds as of wills. And, in view of this, the Chancellor in this case says : " The rule, that the intention of the testator, so far as it can legally be carried into effect, should govern in all devises of real estate, has always been acted upon by courts of justice ; except in two or three special cases, where technical rules of law have been permitted to defeat such intent. The revised statutes having abolished the rule in *Shelley's* case, which formed one of those exceptions, and having also restored the expressions, ' die without issue,' and ' die without leaving issue,' to their natural and obvious meaning, courts of justice are now left free to give such construction to the language of a testator in his will, as to carry into effect his intention." The court further says : " By the

common law, a devise to a man and his children as an imme-
diate gift to both, was held to be a devise to the parent and
children jointly, or to give an estate tail to the father, accor-
ding to circumstances.   If there were children in existence
at the time, it was held that they took jointly with the parent;
but if there were none, he took an estate tail by implication."

The Chancellor then further states that if, from the will, it
appeared that the intention of the testator was, that the children
should take the estate *only* by way of remainder after the death
of the parent, then the children who were in existence at the
death of the testator, as well as after-born children, took the
estate as purchasers, after the termination of the life-estate of
the parent.   He also held that by the terms of the devise the
intention of the testator was to give Mary Ann Philips a life-
estate only, and that her children took the remainder, which
vested in those alive at the death of the testator; opening to
let in after-born children.

We think this case can not be held to support the propo-
sitions relied upon by the appellants, but that, as contended
by the appellee, it is opposed to them.   This is a devise to
Angeline Biggs and her children; it does not appear from the
language of the devise that the testator intended that Angeline
should have only a life-estate, and that her children should
take the estate by way of remainder in fee after her death.
Therefore, in the language of Chancellor WALWORTH, if there
was a child alive at the death of the testator, Angeline and
such child, by the common law, took the estate jointly, or,
under our statute, as tenants in common.

We have carefully examined the other cases referred to by
the appellants' counsel in their able and elaborate brief, but
to discuss and examine them here would extend this opinion
unduly.   In view of the decisions of our own court, we do
not think that the first proposition relied upon by the appel-
lants is the law.   *Siceloff* v. *Redman's Adm'r*, 26 Ind. 251;
*McCray* v. *Lipp*, 35 Ind. 116;   *Andrews* v. *Spurlin*, 35 Ind.
262;  *Gonzales* v. *Barton*, 45 Ind. 295;  *King* v. *Rea*, 56 Ind. 1.

We admit that, as contended by the appellants, the intention of the testator, as gathered from the whole will, should, so far as it can, consistently with the rules of law, be enforced, and that it should guide courts in the construction of the will; but, as will be seen by an examination of the cases referred to by the appellants, it is not always the presumed or actual intention of the testator, but, as contra-distinguished therefrom, his legal intention, that must be enforced. The application of the rule in Shelley's case sometimes unquestionably defeats the intention and actual purposes of the testator; yet the rule has been so long adhered to in Indiana that it must be regarded as the law here until changed by the Legislature.

The devise in this case is extremely simple. Its language is: "I give and bequeath to my daughter Angeline Biggs and her children all my real estate in the county of Shelby, and State of Indiana." Angeline had one child living at the time the will was made. She did not, therefore, according to Wild's case, take an estate tail by implication.

It is alleged in the complaint that the testator's will was probated in Kentucky on the 15th day of November, 1851, upon information of the testator's death. It is also alleged that on the 20th day of November, 1851, five days after the will was probated, another child was born to Angeline, which died three days afterwards; the first child died December 4th, 1850, nearly a year before the second was born.

Upon these facts we think it fair to infer that the testator died after the quickening of the second child, and at a time when it was legally capable of taking the estate jointly, or as a tenant in common, with its mother Angeline; that consequently, upon the testator's death, by the plain terms of the devise, the land in controversy vested in the devisee Angeline and the child with which she was then pregnant as tenants in common. *Hannan* v. *Osborn, supra; Shotts* v. *Poe,* 47 Md. 513; *Viner* v. *Francis,* 2 Cox, 190; *Benson* v. *Wright,* 4 Md. Ch. Dec. 278.

The appellants insist that, if this should be conceded, the

estate so vested in Angeline and her child as that it opened to let in after-born children; that the testator knowing at the time that he made the will that Angeline had then but one child, he used the word " children" to indicate his purpose to provide for all the children which she might have; that the use of the word " children " is inconsistent with the intention on the part of the testator to limit his bounty to the mother and child then living, or to such children as might exist at the time of his death.     But to this it may be replied that the word " children " is used in a general sense, applying as well to such child or to such children as might be living at his death, as to such and subsequently born children.     We have not been able to find a case like this in which it has been held that the estate opened to let in after-born children.

It is said in 2 Jarman on Wills, 702, that "An immediate gift to children (*i. e.*, a gift to take effect in possession immediately on the testator's decease)     *     *     comprehends the children living at the testator's death, (if any,) and those only. Where a particular estate or interest is carved out, with a gift over to the children of the person taking that interest, or the children of any other person, such gift will embrace not only the objects living at the death of the testator, but all who may subsequently come into existence before the period of distribution."     He further says:    " In cases falling within this rule, the children, if any, living at the death of the testator, take an immediately vested interest in their shares, subject to the diminution of those shares * * as the number of objects is augmented by future births, during the life of the tenant for life."

It is obvious that the devise under consideration falls within the first, and not within the second, proposition laid down by Jarman.    It falls within the first, because the gift takes effect immediately upon the death of the testator.    It does not fall within the second, because there is no particular estate carved out of the thing devised, nor is there any gift over to the children.    In complete agreement with Jarman is

the case of *Jones' Appeal from Probate,* 48 Conn. 60; *Hannan* v. *Osborn, supra.*

In the case of *Shotts* v. *Poe,* 47 Md. 513, (28 Am. R. 485), the testator, Lewis Shotts, by his will devised all his property to his son, John Lewis Shotts. Afterwards the testator executed a declaration of trust, setting forth that, in consideration of the natural love and affection which he bore for the children of his said son, he did thereby appoint the said John Lewis Shotts trustee "for the following property for their use, and until they arrived to the age of eighteen years: $1,500 in Baltimore City Stock, and one note of Christian Weisample for $5,000, to take effect at my death; and when each child arrives at age, the said property to go to my son, John Lewis Shotts."

The testator died in 1857, and the will and declaration of trust were admitted to probate as testamentary papers. John Lewis Shotts had, at the date of the trust and at the death of the testator, only two children. He renounced the executorship of the will, and Poe was appointed administrator with the will annexed, who filed a bill in equity, suggesting doubts as to the construction of the will.

After disposing of some preliminary questions, the court says: "The only other question is, whether the term 'children,' used in the declaration of trust, includes children of the son, John Lewis Shotts, that may be born after the death of the testator? And upon this question there can be no doubt whatever. If there be any question that may be regarded as incontrovertibly settled, in the construction of wills or testamentary papers, it is, that an immediate gift to children, *simpliciter,* without additional description, means a gift to the children in existence at the death of the testator; provided there be children then in existence to take. In Powell on Devises, vol. 2, p. 302, the rule, as deduced from all the cases, is stated thus: 'That an immediate gift to children (*i. e.* immediate in point of enjoyment), whether of a person living or dead; and whether it be to the children simply, or to *all* the children; and whether there be a gift over or not, comprehends the *children living at the testa-*

*tor's death* (if any), *and those only;* notwithstanding some of the early cases, which make the time of the making the will the period of ascertaining the objects.' To the same effect is the rule as stated by Redfield on Wills, pt. 2, p. 330; * * and the decided cases fully support the propositions thus laid down by the text-writers." See the many cases cited by the court.

We have examined with care the cases referred to by the appellants. We are aware that the case of *Coursey* v. *Davis,* 46 Pa. St. 25, seems to support the position of the appellants, but in so far as it does this it is opposed to our own decisions. So, too, the case in 3 B. Mon. is apparently in their favor, but, as before shown, the case is opposed to the decisions of this court. So, too, the case of *Jackson* v. *Coggins,* 29 Ga. 403, seems to sustain the second proposition relied upon by the appellants; while the case of *Goss* v. *Eberhart,* 29 Ga. 545, supports the first. But we think the clear weight of authority is the other way.

The following cases, among others, referred to by appellee's counsel, support the conclusions which we have reached: *Goodwin* v. *Goodwin,* 48 Ind. 584; *Glass* v. *Glass,* 71 Ind. 392; *Jenkins* v. *Freyer,* 4 Paige, 47; *Gross's Estate,* 10 Pa. St. 360; *Worcester* v. *Worcester,* 101 Mass. 128; *Campbell* v. *Rawdon,* 18 N. Y. 412; *Handbury* v. *Doolittle,* 38 Ill. 202; *Swinton* v. *Legare,* 2 McCord Ch. (S. C.) 404; *Nimmo* v. *Stewart,* 21 Ala. 682; *Lorillard* v. *Coster,* 5 Paige, 172; *King* v. *Rea,* 56 Ind. 1; 3 Washburn Real Prop., 3d ed., side p. 685.

In *Handbury* v. *Doolittle, supra,* it was held that if no estate intervenes between the death of the testator and the vesting of the estate in children as a class, the estate goes to the children in being at the death of the testator.

In the case of *Nimmo* v. *Stewart, supra,* it was held that if a devise be to one and his children, and he has children at the date of the will and at the death of the testator, the parent and children living at the death of the testator take jointly under the will. To the same eff t is the case of *Smith* v. *Ashurst,* 34 Ala. 208.

This case has been argued elaborately and with much ability on both sides. We have endeavored to consider the case with the care which its importance seemed to require, and have concluded:

*First.* That the devise can not be construed as giving to Angeline Biggs a life-estate in the land described in the complaint, and the remainder in fee to her children.

*Second.* That, upon the facts stated in the complaint, the fair inference is that the testator, Henry Stuck, died while the second child of Angeline Biggs was *in ventre sa mere,* and that, upon the testator's death, Angeline and said second child took, under said will, as tenants in common, the land in dispute; but that the estate thus vested in them did not open to let in after-born children.

*Third.* That, upon the death of said second child, its interest passed to its parents, and that their subsequent grantees took the whole title to said land; that there is no error in the record, and that the judgment below should be affirmed.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment be, and it hereby is, in all things affirmed, with costs.