23  705
94  112

## FURLOW'S ADM'R vs. MERRELL.

1.  When a paper is appended to the answer to an interrogatory, and the interrogatory itself is not set out in the record, the Appellate Court will presume, against the plaintiff in error, that the answer was responsive to the interrogatory; and plaintiff in error being thus held to have called for the production of the paper, he cannot object to its having been read in evidence by defendant.
2.  A testator bequeathed a slave to one of his daughters, by her maiden name, "*entirely* for her and her children," and gave others specific legacies of slaves with incumbrances on them: *Held*, that the word "entirely" did not exclude the marital rights of the husband, but had reference only to the quantity of the estate which the legatee took as compared with the others; that, if she was unmarried at the time the will took effect, she took a life estate only, with remainder to her children; but if she was then married and had children, she took an absolute estate jointly with them.
3.  In detinue by the husband's administrator, after the death of the wife, for a slave bequeathed to her by her maiden name, "entirely for her and her children," the will was construed to give her a life estate only if she was unmarried when the will took effect, but an absolute estate jointly with her children if she was then married and had any; and the record contained no evidence that she was then married: *Held*, that, construing the bill of exceptions most strongly against the plaintiff in error, it would be presumed that she was then unmarried.

Error to the Circuit Court of Macon.

Tried before the Hon. Robert Dougherty.

Detinue by the plaintiff in error, as administrator of John Furlow, deceased, for a slave named Sam.

On the trial a bill of exceptions was allowed, by which the following facts appear: The plaintiff proved that his intestate, John Furlow, had possession of the slave in controversy for several years in the State of Georgia, to-wit: from about 1832 up to the time of his death in 1840 or 1841, and that the property,

with other slaves then went into the possession of his wife, Cynthia Furlow, and continued therein while she resided in Georgia, and until after her removal to Alabama in 1843, after which she mortgaged the negro Sam to the defendant; that subsequent to the decease of said Cynthia Furlow, a bill was filed in behalf of her administrator, against the defendant, Merrell, praying the sale of said negro to satisfy said debt, and that the balance be paid to such administrator; that a decree was made to that effect, and a sale made at which the defendant became the purchaser.

The defendant gave in evidence the will of George M. Hill, the father of the said Cynthia Hill, in which is found this clause : "I give to my daughter, Cynthia Hill, one negro girl, named Ann, together with all her increase, entirely for my daughter's benefit and her children ;" and then offered evidence showing that the slave in question was the son of the said negro girl Ann.

The defendant offered in evidence the fifth interrogatory propounded to a witness named A. Bartlett and the answer thereto. The plaintiff objected to this evidence, " on the ground that the answer was not responsive to the question, and because the same was illegal and irrelevant, the question being as to a will of George M. Hill, and the answer as to a will of George M. Hill; but which objections were overruled, and the defendant excepted." The interrogatory and answer are as follows : " Please look upon the paper shown to you, purporting to be a copy of the will of the said George M. Hill, and state, if you were present when said will was executed, who executed the same ? at what time ? and who were the subscribing witnesses to said will ? Please examine the said will, and state if the woman Ann therein bequeathed is the same Ann about whom you have been testifying ? How long had the said John Furlow and Cynthia Furlow, alias Cynthia Hill, been living together before said will was executed ? Why was said woman Ann bequeathed to said Cynthia by the name of Cynthia Hill, instead of Cynthia Furlow ? How many children did the said Cynthia have at that time, and what were their names ? Were they called by the name of Furlow or Hill ?"

" Witness says he has looked upon the paper shown him purporting to be a copy of the will of George Hill; was present

when the will was made ; it was written by Charles A. Dennis. Hill made his will with the expectation of going to the Indian war, in Gen. Floyd's army ; Wm. Ingram and witness were witnesses to the will ; does not remember that there was any other witness thereto ; the woman Ann named in the will is the woman about whom I have testified above ; does not remember now whether Furlow was married to his wife Cynthia at the time the will was made, but thinks he was."

" In support of the objection, and before the decision of the court thereon, the plaintiff offered and read to the court the answer to the fourth cross interrogatory to the same witness, as follows : " Witness says that he is about eighty four years old ; cannot see to read without the aid of spectacles, but with it can read to my own satisfaction ; with the aid of glasses witness can read plain writing ; witness admits that he has not read the paper purporting to be a copy of George Hill's will, but recollects, upon hearing it read, that it is the will of George Hill ; witness further states that Wm. E. Carter has just read over the paper purporting to be a copy of the will of George Hill ; witness states further that he recollects distinctly to have been acquainted with George M. Hill, was present when he died, and that he is the man about whom he has been testifying, and about whom inquiry has been so often made in these interrogatories, evincing that the witness did not speak of the will a copy of which is here set out." (Here follows a copy of the will signed by George Hill, and attested by Sally E. P. Ingram, Thomas Ingram and witness.)

The first bequest contained in the will is to his daughter Cynthia, and has already been stated. The will then proceeds, as follows :

" 2nd. I give and bequeath unto my daughter, Ruth Molsey, one negro girl named Betsey and all her increase.

" 3rd. I give and bequeath unto my son, Manning D. Hill, fifty dollars.

"4th. I give and bequeath to my grand-son, John M. Hill, son of Manning D. Hill, one negro girl Chany, her first child to be the property of Mary Hill, daughter of Manning D. Hill, and all the rest of her (Chany's) increase to be the property of the above named John M. Hill ; which negro girl is to be for the use of Manning D. Hill his life-time, but at his death to be di-

rectly given up to John M. Hill and considered his property.

"5th. I give and bequeath to my grand-daughter, Minerva Hill, one negro girl Cresa, with all her increase, to the said Minerva Hill and heirs.

"6th. I give and bequeath the first issue of my negro woman, Suckey, from this day to Martha Lyon Hill, daughter of Manning D. Hill.

"7th. My negro woman, Suckey, is to be kept by my wife, Mary Hill, during her life-time, together with all and singular the residue of my negroes and all my personal property, and I do hereby make and ordain, &c."

This will is dated the 5th day of October, 1813, and purports to have been proved the 6th day of June, 1814.

The bill of exceptions goes on as follows :

"The plaintiff waived the necessity of the certificate of the judge to the alleged copy will annexed, and admitted that W. B. Carter was the proper ordinary; upon which the defendant offered to read in evidence the annexed paper purporting to be a copy of the will of George Hill, which annexed paper was attached to the deposition of Allen Bartlett, with the certificates and endorsements thereon. To the reading of which, severally and collectively, the plaintiff objected, and stated the ground of his objection : 1st, that it did not purport to be the will of George M. Hill inquired after; 2nd, because of the uncertainty of the proof as to the identity of the will and of the testator, the will deposed to being attested by only two witnesses and that offered in evidence was attested by three ; 3rd, because there was no sufficient evidence of probate, or of the same having been probated, that there was no such evidence offered as would authorize the reading of said paper as a will, no letters testamentary or of administration with the will annexed ; and 4th, because the bequest was to Cynthia Hill, when there was no such person in existence, her rights being merged in her husband, John Furlow : but which objections were severally overruled by the court, and the said paper and endorsements and certificates read in evidence; to all of which the plaintiff severally excepted."

Upon this state of proof, the court charged the jury, that the will gave a separate estate to Cynthia Furlow, *alias* Cynthia

Hill, and excluded the marital rights of the husband; and that no such estate vested in John Furlow as would authorize his administrator to recover, and they must find for the defendant; to which charge the plaintiff excepted.

The errors here assigned are: 1st, the admission of the testimony objected to by the plaintiff in error; and 2nd, the charge of the court as given to the jury.

GEO. W. GUNN, for plaintiff in error:

1. The effect of marriage at common law is, to merge the separate existence of the wife into that of the husband, which operates an absolute gift to him of the personal chattels of the wife which were in her possession at the time of the marriage, and who takes the same interest in personal chattels which come into his wife's possession during the coverture, whether the same be by gift, bequest or otherwise.—Clancy on Husband and Wife 2, 3.

2. The language employed does not create a separate estate in the wife, nor even attempt it; and it will be found that the uniform tenor of the decisions of this court is, that in order to exclude the marital rights of the husband, the language must be such as to show a clear and manifest intention to create a separate estate in the wife.—8 Por. 73; 2 Ala. 152; 6 Ala. 418; 7 Ala. 589; 8 Ala. 345. The decisions cited further held, that it is an inseparable incident to the creation of a separate estate in the wife, that the husband has no control or dominion over the property, and that his interest must be excluded by direct words, or a manifest intent; and in many of the cases it is said, that, notwithstanding the conveyance be made to trustees for the use of the wife, and no estate or interest be in terms given to or vested in the husband by the deed, yet his control or dominion over the property is not necessarily excluded.—12 Ala. 46.

3. Under this will, the gift took effect upon the death of Geo. Hill, the testator. The property then vested in Cynthia Hill; and if she was then, or soon thereafter became the wife of plaintiff's intestate, his marital rights attached; and the limitation over, (if indeed it may be so called) in favor of the residuary legatees, is void, because repugnant to the gift, which vested in the husband of the legatee an absolute power to dispose

of the property. At common law, there was no remainder of a chattel, but every gift or bequest, for any period however short, vested the absolute property.—See 2 Kent's Com. 352 ; - 5 Johns. Ch. 334 ; 10 Johns. R. 12.

4. A distinction, however, was introduced at an early period, between the bequest of the use of a chattel and the thing itself; and the rule of the common law was so far changed, that the use only of a chattel might be given to one, and a remainder over to another.—2 Kent's Com. 352.

5. Courts of equity, availing themselves of this distinction, have in modern times supported limitations of personal property, when confined to the period allowed by law, in all cases where the terms of the bequest were such as to admit of the construction that the use only was only intended to pass.—2 Kent's Com. 352, 353 and 354.

6. But when the terms of the bequest are such as clearly vest in the first taker the legal title or right of property, the rule of the common law is still applicable, and renders void every subsequent limitation.

7. Nor is it in such cases necessary, in order to avoid the future limitation, that the power of disposition should be given to or exercised by the first taker; but it is sufficient, if the terms of the bequest are such as, by their necessary legal effect, vest in the husband the right of property, from which the power of disposition of chattels is inseparable. In this case, there is no limit to the estate of the first taker, and he could have exercised the power of disposition at any time ; and a purchaser from him could have acquired an indefeasible title. And I insist, according to a correct construction of the will, that it was at the option of the husband of Cynthia Hill, whether that benefit for the daughter and her children, as expressed in the will, was to be realized from the use and employment of the property, or from a sale and the use of the proceeds arising therefrom.

8. The terms employed vested the property in the husband of Cynthia Hill upon the marriage; and had the testator desired to have prevented the marital rights of the husband from attaching, he could have done so by interposing trustees, or by the creation of a separate estate in the daughter. But I insist that the limitation over is inconsistent with the absolute interest

which plaintiff's intestate acquired in the property. See the following authorities in support of the positions assumed :— Allen v. White, 16 Ala. 181 ; Davis v. Flinn, 18 Ala. 132 ; Brewster v. Bull, 10 Johns. 19 ; 16 *ib*. 537 ; Ide v. Ide, 5 Mass. 500 ; Patterson v. Ellis, 11 Wendell 276 ; 22 Wendell 137 ; Jones v. Callach, 8 Ves. 38 ; 1 *ib*. 268 ; Story's Equity Jurisp. vol. 2 § 1069 and note 2.

9. That the court erred as assumed by the first and second assignment, see Armstrong v. Lea, 12 Wheat. 169 ; Tarver v. Tarver, 9 Peters ; Shephard v. Nabors, 6 Ala. 637, and cases there cited, in which the doctrine is clearly announced, that the paper purporting to be a will could have only been admitted as evidence, by being first proven in a court having appropriate jurisdiction of such matters, or by being accompanied with letters testamentary or of administration.

The evidence upon which the same was admitted, was uncertain, contradictory and indefinite, and in the absence of proper evidence that the same had been probated in any court.—9 Wheat. 565, and Moore v. Lewis, 21 Ala. 580.

R. F. Ligon, *contra*, contended :

1. That the act of the court of Georgia, admitting to probate the will of George Hill, cannot be collaterally impeached, except for fraud or want of jurisdiction. —10 Bacon's Abr. 527 ; 10 U. S. Dig. 280 §§ 58, 66 ; Lee v. Hamilton, 3 Ala. 529 ; Crawford v. Exr's of Simonton, 7 Por. 126 ; Baily v. Baily, 8 Ohio 239 ; Bothwell *et al.* v. Hamilton, adm'r, 8 Ala. 461, and cases there cited.

2. A decision on the probate of a will is a judicial proceeding, and the court in which it is registered is a court of record ; and all courts in the United States take judicial notice that such tribunals are established in the several States.—Dozier v. Joice, 8 Port. 313 ; 7 Cranch R. 481 ; Balfour v. Chew, 5 Mart. Louis. R. 517.

3. Every court makes its own record, and the form and manner of such record cannot be examined into indirectly by another court.—11 U. S. Dig. 199 § 48 ; 10 *ib*. 197 § 58 ; 9 *ib*. 203 § 57 ; Regan v. McCormick, 4 Har. 435 ; Lee v. Gause, 2 Iredell 440.

4. When the subject matter is a judgment or probate of a

will, the presumption is, that these are every where matters of record ; and it is the certificate of the judge which establishes the validity of the form pursued by the clerk, it makes no difference what this form is.—White v. Strother *et al.*, 11 Ala. 723.

5. The refusal of the Circuit Court to exclude the answer to the second and fifth interrogatories in A. Bartlett's testimony was correct, because it was a question of fact to be left to the jury.

6. The main question in the case is, the construction of that clause of George Hill's will which reads thus, " I give to my daughter Cynthia Hill a negro girl, named Ann, together with all her increase, *entirely* for my daughter's benefit and her children." We insist that, under this clause, the marital rights of the husband are excluded.—Brown v. Johnson, 17 Ala. 232 ; Williams' Adm'r v. Maull, 20 Ala. 726 ; Newman v. James & Newman, 12 Ala. 29.

7. In the case of an unmarried woman, much stronger terms are required to indicate the intention of the donor or testator to create a separate estate, than in that of a married woman.— The proof shows that Cynthia Hill was married.

8. The limitation over in favor of the children is not void; it is neither too remote nor inconsistent with the gift to the mother ; Cynthia Hill and her children either take a joint interest under the will, or she has an estate for life with a resulting trust in favor of her children. The general rule of law is, if a devise be to one and his children, and he has children at the death of the testator, the parent and children take jointly under the will.—Nimmo v. Stewart, 21 Ala. 690.

GIBBONS, J.—The court, in our opinion, committed no error in permitting the answer to the fifth interrogatory set out in the bill of exceptions to be read to the jury. The objections were, that this answer "was not responsive to the interrogatory, and because the same was illegal and irrelevant, the question being as to the will of George M. Hill, and the answer being as to a will of George M. Hill." It will be seen, when this answer is compared with the interrogatory, that it is for the most part directly responsive thereto. Nor can we see how the testimony was illegal or irrelevant. It is true, the will, when produced, purports to have been signed by George Hill, whereas

the interrogatory is as to a will of George M. Hill. In the answer to this interrogatory, as well as in answer to the fourth cross-interrogatory, also set out in the bill of exceptions, the witness seems to speak indifferently sometimes of George Hill and sometimes of George M. Hill, but, as explained in the answer to the fourth cross-interrogatory, always meaning the same person, viz., the father of Cynthia Hill, *alias* Cynthia Furlow. If there was any doubt as to the competency of the answer to the fifth direct interrogatory standing by itself, that doubt, in our opinion, is entirely dispelled by the answer to the fourth cross-interrogatory; and this was introduced by the plaintiff below, in order to show the answer to the fifth direct interrogatory inadmissible. The effect, in our opinion, is the very reverse of what was intended by the party introducing it, as the witness therein explains that, in speaking of a will made by George Hill or George M. Hill, he is all the while speaking of the same person, and of him who made the will.

The defendant offered in evidence a paper purporting to be a copy of the will of George Hill. The bill of exceptions states, that the "plaintiff waived the necessity of the certificate of the judge to the alleged copy will annexed, and admitted that W. B. Carter was the proper ordinary." This copy will was appended to the answer of the fourth cross-interrogatory above referred to, which was offered by the plaintiff in evidence to the court, to show the incompetency of the answer to the fifth direct interrogatory. The language of the bill of exceptions is, "which annexed paper was attached to the deposition of Allen Bartlett, with the certificates and endorsements thereon." The copy set out in the bill of exceptions has no certificate attached to it, and the only endorsement which we observe is as follows: "Proven in open court, this 6th June, 1814, Coleman Pendleton, C. C." The objections to the introduction of this paper were: "that it did not purport to be the will of George M. Hill inquired after; 2nd, because of the uncertainty of the proof, as to the identity of the will and of the testator, the will deposed to being attested by only two witnesses, and that offered in evidence was attested by three; 3rd, because there was no sufficient evidence of probate or of the same having been probated, that there was no such evidence offered as would

authorize the reading of said paper as a will, no evidence of letters testamentary or of administration with the will annexed; and 4th, because the bequest was to Cynthia Hill, when there was no such person in existence, as her rights were merged in her husband, John Furlow.'' These several objections we shall not take the trouble to examine minutely in detail, as the circumstances under which they are made relieve us from that necessity. According to a well established rule of this court, the bill of exceptions will be taken most strongly against the party excepting, and every reasonable and legitimate intendment will be made in favor of the decision of the court below. As above remarked, the above mentioned copy of the will comes appended to the fourth cross-interrogatory of the plaintiff below, whilst the interrogatory itself is not set out. It is clear, if the plaintiff had called upon this witness to append a copy of the will to his answer to the fourth cross-interrogatory, he would thereby be estopped from objecting to it as evidence in the cause; having himself called for it, if the other party wishes it it must be read to the jury.— *Vide* Edgar v. McCarn, at the present term. In the absence of the interrogatory propounded to the witness, we think it but fair to presume that the answer was responsive to the matter inquired of, and that the witness did that only which he was requested to do. If this is not the fact, and the plaintiff wished to rebut this legal presumption, he should have set out the interrogatory with the answer, in order that we might see whether the copy of the will was called for by it or not. There was, therefore, no error in permitting this copy of the will to be read to the jury at the instance of the defendant in the court below.

Independent, however, of these considerations, we do not consider the objections well taken, as the three first raise the question, whether the will was in fact the one under which the defendant claimed title. This was a question of fact to be decided by the jury, and the plaintiff had the right to have the attention of the jury directed to this inquiry, by asking the appropriate charges, if he had thought proper. The fourth objection we could not sustain, if for no other reason than the fact that we are entirely unable to gather from the bill of exceptions whether Cynthia Hill was married or not when the will was made. This objection assumes such to be the fact; but

the bill of exceptions does not, in our opinion, warrant the assumption. The only testimony upon the subject set out in the bill of exceptions is the answer of Bartlett to the fifth direct interrogatory, in which he says, "he does not remember now whether Furlow was married to his wife Cynthia at the time the will was made, but he thinks he was." But, if Furlow was married at the time the will was made, we apprehend his wife Cynthia would not loose a bequest, which happened to be made to her by her maiden name, if it was clear that she was the person intended as the legatee by the testator.

The only remaining question is as to the charge of the court, and this raises the question as to what estate the said Cynthia Furlow, *alias* Cynthia Hill, took in the bequest made to her in the will. The words are : "I give to my daughter, Cynthia Hill, one negro girl, named Ann, together with all her increase, entirely for my daughter and her children." The court charged the jury, that the above bequest gave to Cynthia Hill, *alias* Cynthia Furlow, "a separate estate, and excluded the marital rights of the husband ; and that no such estate vested in John Furlow as would authorize his administrator to recover, and they must find for the defendant." As above remarked, we are entirely unable to gather from the present record whether the legatee, Cynthia Hill, was married or not at the time the will was made, nor does it appear whether or not there were any children at the time that the testator died. These facts are, in our opinion, essential in order to determine, with any thing like precision, the rights that accrued to the legatee under the will at the time that the bequest took effect. Both the counsel in the cause, and the court, seem to have taken it for granted that the legatee was married at the time the will was made ; but the only proof upon that subject which the record contains leaves the matter entirely in doubt. The words of the bequest, as we construe them, would under ordinary circumstances be sufficient to create a separate estate, if the legatee was married at the time the will was made, but not otherwise. But these words, when considered in reference to the whole will, we do not consider as indicative of any thing appertaining to the rights of her husband, if she then had one, or of one which she might have. It will be recollected that the testator has given negro women to other legatees with incumbrances upon them ; as for

instance, to John M. Hill is given one negro woman, with a pro-
viso that her first child should be the property of Mary Hill,
the sister of the legatee, but a life-estate in the same negro is
reserved to the father, Manning D. Hill; one other negro is
bequeathed in a similar manner.  Our conclusion, therefore, is,
that the words "entirely for my daughter's benefit and her
children," relate not to the marital rights of the husband of
the legatee, but to the quantity of the estate which the legatee
was to take, as compared with some of the other legatees in the
will who took incumbered legacies.  The court below probably
based its charge upon the idea that the words above mentioned,
as employed in the will, were used with the intention of exclu-
ding the marital rights of the husband of the legatee; but such,
from a careful examination of the whole will, is not our con-
clusion.

Admit, for the present, that the court misconstrued the
language of the bequest, in supposing that it created a separate
estate in the legatee, upon which the marital rights of the hus-
band could not attach; it yet remains to be seen whether there
was any error in the charge of the court of which the plaintiff
in error can complain.  As above remarked, it does not appear
from the present record whether the legatee was married or not,
neither does it appear whether she had any children at the time
the legacy took effect.  This latter fact, as we construe the
words of the bequest, is absolutely essential to be known, in or-
der to determine with any accuracy the estate which Cynthia
Hill took in the bequest.  If she was then unmarried, the
words of the bequest would, in our opinion, create a life-estate
simply in Cynthia Hill, with remainder over to her children;
but if she was married and had children at the time that the
will took effect, then she would take absolutely a joint estate
with the children.—Nimmo v. Stewart, 21 Ala. 682.   In the
latter case, then, Mrs. Furlow would have an interest to which
the marital rights of the husband would attach, and that inter-
est would pass to his representatives; but in the former case,
Cynthia Hill, *alias* Furlow, would take only a life-estate, with
remainder, or rather a springing use, in favor of her children at
her death.  In the latter case, it is clear that the administrator
of the husband could maintain no suit for the property after the
life-estate of the wife had ceased by her death, as by that event

the right of the children in the property would become complete. The record being silent as to the facts relative to the *status* of the legatee at the time the bequest took effect, and also as to whether there were then any children, the same principle again arises already invoked in a former part of this opinion, viz., that the bill of exceptions is to be construed most strongly against the party excepting. In the absence of proof, therefore, we are bound to presume that Cynthia Hill was unmarried at the time the will was made and the bequest took effect, and that no children of the said Cynthia were then in existence. This is by no means a violent presumption, as she is called by her maiden name in the will, and it is but fair to conclude that, if she was then Mrs. Furlow, her father would have called her by that name in his will. Indeed this presumption is strengthened by the fact, that in the same will the testator makes another bequest to another of his daughters by the name of her husband. Assuming then the fact to be that the legatee was unmarried at the time that the bequest took effect, and she being proved to have died before this action was brought, it is manifest that the plaintiff, as administrator of Furlow, could not recover the property, and the instruction of the court to the jury, that they must find for the defendant, was right, although a wrong reason was assigned for it.

Our conclusion is, that there is no error in the record of which the plaintiff in error can complain, and the judgment of the court below is consequently affirmed.