# WILLIAMS *vs.* McCONICO.

[DETINUE FOR SLAVES.]

1. *Construction of deed of gift to grantor's daughter and the heirs of her body.*—Under a deed of gift, by which the grantor, after reciting his wish to make permanent provision for an unmarried daughter and her children, conveyed certain slaves to a trustee, "for the sole use of my [his] said daughter Prudence and the heirs of her body forever ; but, in case the said Prudence shall die without an heir, then the said negroes, together with their increase, to return to my estate, to be equally divided between her brothers and sisters,"—*held,* that the interest of the daughter, whatever it might be, terminated at her death, and that the children then took the absolute property as remainder-men.

2. *Continuance of trustee's title.*—Where slaves are conveyed by deed to a trustee, "or his legal representative," for the sole use and benefit of the grantor's unmarried daughter and her children, forever, the legal title of the trustee does not cease at the death of the daughter, leaving children ; and if the original trustee resigns, and another person is appointed in his stead by the circuit court, the death of the substituted trustee does not invest the children with the legal title.

3. *Admissibility of record as evidence.*—In detinue for slaves, by persons claiming as remainder-men under a deed of gift, against the representative of the husband of the first taker, a transcript from the records of the circuit court of the county in which the deed was recorded, showing the resignation of the trustee appointed by the deed, with the consent of the grantor and beneficiary, and the appointment of another trustee in his stead, is not admissible evidence for the plaintiffs, in connection with the proof of the death of the substituted trustee, to show that there is no legal title outstanding against them. when the identity of the names of the parties is the only evidence connecting the record with the slaves and deed in controversy, and it appears that the death of the trustee did not invest the plaintiffs with the legal title to the slaves.

APPEAL from the Circuit Court of Sumter.

Tried before the Hon. PORTER KING.

THIS action was brought by the appellants, who were the children of James O. and Prudence Williams, both

deceased, against Christopher S. McConico, to recover certain slaves, which the plaintiffs claimed under a deed of gift from their maternal grandfather, William Thompson, and of which the defendant held possession as the administrator of said James O. Williams. The plaintiffs read in evidence on the trial, without objection from the defendant, a certified copy of the deed of gift from said Thompson, which was in the following words:

"State of Alabama, } Know all men, by these presents, that I, William Thompson, Morgan county. } of the county and State aforesaid, for and in consideration of the love and affection I have and bear towards my daughter, *Prudence Richard Thompson*, and wishing to make permanent support for her and her children, I do hereby give and grant unto my son, Robert A. Thompson, or his legal representative, in trust, and for the sole use and benefit of my said daughter, *Prudence Richardson*, and the heirs of her body forever, the following negroes, to-wit:" (specifying them by name,) "together with their increase; to have and to hold the said negroes to the said Robert A. Thompson, trustee as aforesaid, or his legal representative, for the sole use and benefit of my said daughter, *Prudence Richardson*, and the heirs of her body forever; but, in case the said Prudence shall die without an heir, the said negroes, together with their increase, to return to my estate, to be equally divided between her brothers and sisters. In testimony whereof, we have hereunto set our hands and seals, this 22d day of April, 1830."

"WILLIAM THOMPSON, [Seal.]"
"RO. A. THOMPSON, [Seal.]"

The bill of exceptions states, that "the following proof was also made: That said deed was duly acknowledged, probated, and admitted to record, in Morgan county, on the day of its date; that said Prudence subsequently married James O. Williams, who died, intestate, before the bringing of this suit; that the plaintiffs are the issue of said marriage, all of whom are minors and sole hers of said Prudence, who died before her said husband; that some of the slaves sued for are a portion of those men

tioned in said deed, and the others are their increase, since born; that the said William Thompson had the possession and ownership of said slaves at the time of the grant, and the defendant was in possession of those sued for at the time the suit was brought; that Robert A. Thompson, the said trustee, controlled the property, from the time of the conveyance, until the marriage between said Prudence and James O. Williams."

"The value of said slaves, and of their respective hires, was also proved; and it was further proved, on the part of the defendant, that he had been duly appointed and qualified as administrator of said James O. Williams, deceased, and was still acting under said appointment, which was unrevoked and of force; and that his said intestate died in possession of said slaves."

During the progress of the trial, the plaintiffs offered to read in evidence a transcript, duly certified, from the records of the circuit court of Morgan county, containing an entry, made on the 11th March, 1839, in the following words:

"*Ex parte*      } Whereas, upon the application of Robert A. Thompson, trustee. } Thompson, who has been heretofore created trustee, by deed of record in the office of the county court of Morgan county, executed by William Thompson, conveying for the uses and trusts therein specified certain negroes; and the said William Thompson, Prudence Williams, late Prudence Thompson, who was the *cestui que use* in said deed, and James O. Williams, the husband of said Prudence, coming into open court, and consenting to the resignation of the said Robert A. Thompson of his said office as trustee; and it appearing to the satisfaction of the court, by the admissions of the parties, that none of the trust property had come into the hands of the said trustee; it is, therefore, ordered and decreed by the court, that the said Robert A. Thompson be released from the said office of trustee; and it is further ordered, upon the application of the said parties, and upon satisfactory evidence of his qualifications therefor, that the said James O. Williams be appointed in his stead as trustee, and to

Williams v. McConico.

do and perform whatever may devolve upon him according to the provisions and powers of said deed."

"Being called on to state the object of the introduction of said record, plaintiffs' counsel said, that it was for the purpose of thereby showing an admission on the part of the said James O. Williams against any marital rights of his that might be set up against them. The court refused, on the defendant's objection, to allow the same to be read in evidence, and the plaintiffs thereupon excepted. The plaintiffs then offered to introduce said record in evidence, in order to show that the trusteeship had changed to said James O. Williams, who was dead, whereby there was no legal estate outstanding against them; but the court refused, on the defendant's objection, to allow the same to be read in evidence, and the plaintiffs thereupon excepted."

"The foregoing being all the proof in the cause, the plaintiffs requested the court to charge the jury, 'that if they believed the evidence, the plaintiffs were entitled to recover.' The court refused to give this charge, and instructed the jury, 'that the deed under which the plaintiffs claimed did not convey to them such an interest as that they could maintain this action;' also, 'that under the proof in the cause, the plaintiffs had not shown sufficient title to recover upon, and they must find for the defendant, if they believed the evidence'; to which charges, as well as to the refusal of the charge requested, the plaintiffs excepted."

The rulings of the court on the evidence, the charges given, and the refusal of the charge asked, are now assigned as error.

T. B. WETMORE, for appellants.—Whatever estate Prudence Thompson took under the deed, was a separate estate, to which the marital rights of her husband did not attach. This is shown by the appointment of a trustee, she being at the time unmarried; by the provision made for a "permanent" family support, and by the use of the words "sole use and benefit." That part of the deed which goes to the creation of the separate estate, is almost

3

identical with the controlling words in Jenkins v. McConico, 26 Ala. 214; while in the appointment of a trustee, and in the employment of the words "sole use and benefit," the case at bar is stronger than the one cited.

The estate of Prudence is for life only, with remainder to her surviving children; for the latter part of the deed shows, that, if she dies *without an heir*, the property was to be divided among her brothers and sisters. The term *heir*, as here used, means issue; because the same clause contains a provision for brothers and sisters, who, in default of issue, are heirs by law. The word is used, then, in its common, and not in its legal acceptation. Indeed, the term is always incorrect, when applied to personal property. There can be no provision for the division of property on the death of a party, when that party takes an absolute estate.

That the estate which Prudence took, whether she held in severalty, or jointly with her children, lasted no longer than her life, is shown by the fact that provision is made for the disposition of the whole property, and not of a portion of it only—"*said negroes* to return," &c. It is apparent, then, that she left no estate to be administered in the property, and that the entire interest is in the plaintiffs. A distribution of any portion of the property as her estate, would be inconsistent with the provisions in the last part of the gift, which make the property go directly as granted; the words "return to my estate," &c., being unnecessary, and only designed to explain the conditional gift to the brothers and sisters; and showing, at least, that no portion was to go to her estate.

Does the deed, then, vest a remainder in the children? The words "heirs of the body," denoting an estate-tail, ordinarily convey an absolute estate, when used in gifts of either real or personal property; but, when "restricted by some expression indicative of an intention that the first estate shall cease on the first taker's dying without issue at the time of his death," they do not create an estate-tail. Fellows, Wadsworth & Co. v. Tann, 9 Ala. 1003. This deed contains such a provision distinctly: Upon the death of Prudence without issue, the property

Williams v. McConico.

was to return to the donor's estate, to be equally divided among her brothers and sisters.    The intention of the testator is manifest, and contravenes no rule of law.

The purpose for which a trustee was appointed, has ceased with the death of both parents.    There is now nothing for the trustee to do, and no occasion for the exercise of any power.    The conveyance is to him and his personal representative—not his heirs—and contemplates the existence of the trust for a very limited time; and, on the happening of a certain event, there is a provision for the distribution of the property; in both of which particulars the case differs from that of Bryan v. Weems, 29 Ala. 423.    But, even if a different construction should prevail as to the estate of the trustee under the deed, the court erred in rejecting the evidence of the resignation of that trustee, and the substitution of a new one, whose estate terminated with his life.    It is submitted that, where a court appoints a trustee, his estate never lasts longer than his life.    The act of 1829, (Aikin's Digest, 427,) under which Williams was appointed trustee by the court, does not authorize the continuance of the trusteeship longer than the life of the trustee; the condition of the estate, and of the parties, does not require its further continuance; and the deed contains no provision which now calls for it.    On this point, see Code, §1323; 19 Ala. 747; 3 Sneed, 231.

If these views are correct, the record which was excluded should have gone to the jury, and they should have been left to decide whether it referred to the slaves here in controversy.    The grantor, the trustee and the beneficiary, as described in the transcript, are the same as in the deed; the species of property in each is the same, and the county in which the deed purports to have been recorded.

The appellants insist, in brief, that they are remaindermen under the deed, and that there is no trust estate intervening to defeat their action.

S. F. HALE, contra.—The deed conveys either an absolute estate to Prudence Thompson, subject to be defeated by her death without issue, or an estate-tail, which con-

sequently gives an absolute estate; and in either event the plaintiffs cannot recover.—14 B. Monroe, 322; 24 Ala. 315; 15 Ala. 373;.18 Ala. 400; 26 Ala. 593, 676; 9 Leigh, 253. The words "wishing to make a permanent support for her and her children," in the introductory part of the deed, cannot control the granting clause.—Webb v. Webb, 28 Ala. 588; Denson v. Mitchell, 26 Ala. 360.

R. W. WALKER, J.—The donor employs three different expressions, (all having different significations, if technically understood,) to designate the same persons— to-wit, at one place *"children,"* at others, *"heirs of the body,"* and at still another, *"an heir."* This circumstance very clearly indicates, that the instrument was prepared by a person not familiar with the precise meaning of the technical phrases employed; and in construing it, much greater latitude is allowable, than would be indulged in the construction of a deed bearing upon its face evidence of having been drawn by one who was accurate in the use, and acquainted with the legal effect, of the particular expressions to be found in it.—22 Ala. 438; 20 Ala. 710. We think that the words "heirs of the body," and "heir," as employed in this deed, are so explained by the context, as to show that they were used as synonymous with children.—Robertson &. Pettibone v. Johnston, in MS.

The rule of construction commonly known as the rule in "Wild's case," is, that where lands are devised to a person and his children, and he has children at the time the will is made, and at the death of the testator, the parent and children living at the testator's death take jointly under the will; but, where the devise is to one and his children, and he has no children at the date of the will, or at the testator's death, the parent takes an estate-tail.—6 Coke's R. 17; 2 Jarman on Wills, 307–8, and cases there collected; Nimmo v. Stewart, 21 Ala. 691; Furlow v. Merrill, 23 Ala. 716.

If this rule is applicable to wills of personal estate, a bequest to A. and his children, there being no children *in esse* at the time, would, as a general proposition, give to the parent the absolute interest, according to the fami-

liar doctrine that the same terms which, when employed with respect to real estate, create an estate-tail, carry, if used in a bequest of personalty, the absolute property. In the English courts, it has been occasionally questioned whether the rule in Wild's case is applicable to wills of personalty.—See Paine v. Wagner, 12 Sim. 188; Stokes v. Heron, 12 Cl. & Fin. 161; 2 Wms. Exrs. 937. But our decisions seem to settle it as the law in this State, that in this respect no distinction is to be recognized between devises and bequests; and that where property, whether real or personal, is limited to one and his children, there being no children, either when the will is made, or when it takes effect, the general rule is, that the absolute property vests in the parent.—See Vanzant v. Morris, 25 Ala. 292; McCroan v. Pope, 17 Ala. 617.

There can be no doubt, however, that in both of the cases which have been mentioned—that is to say, where there are children *in esse*, and also where there are none —slight indications in the context, of such an intention on the part of the testator, have frequently been thought sufficient to justify courts in holding, especially in bequests of personalty, that the parent shall take for life, with remainder to his children, including herein all the children that may be born before the termination of the parent's life-estate. The chief reason for such an inclination on the part of the courts, where the gift is to one and his children, there being children *in esse* at the time, is, that the other construction, resulting from the application of the first branch of the rule in Wild's case, by confining the gift to those children who are living at the testator's death, excludes entirely all those born after that event. Another reason which has been suggested is, that the children, if tenants in common with the parent, might, on arriving at age, demand a partition, and thus deprive the parent, who in these cases is frequently, if not usually, the primary object of the testator's bounty, of the means of support in old age.—Chesnut v. Meares, 3 Jones' Eq. 417.

Where there are no children *in esse* at the time the gift takes effect, the general rule, which vests the absolute

estate in the parent, has, in some instances, been treated
as even less stubborn, and still more easily turned aside
by the force of slight additional expressions in the will.
Indeed, the Kentucky court of appeals has, in a recent
case, and in a well considered opinion, distinctly repudi-
ated this second branch' of the rule in Wild's case; and
the decision is placed upon the ground, that the law of
that State having converted estates-tail into absolute *fee-
simple* estates, the reason on which the rule was founded
has ceased to exist; and in fact, that the very policy which
caused it to be adopted, now demands its abrogation.
The English rule, it is properly said by the court, was
originally adopted in order to effectuate the intention of
the testator. "The intent is manifest and certain that
the children should take, and as immediate devisees they
cannot take, because they are not in *rerum natura*; and
by way of remainder they cannot take, for that was not
his intent, for the gift is immediate; and therefore such
words will be taken as words of limitation."—6 Coke's
R. 17 (a). That is to say, such a devise was construed to
create an estate-tail, in order to render the gift to the
children effectual; and under that rule, in England, the
gift to the children was made effectual. But in this
country, where estates-tail are converted into estates in
fee-simple, the very rule which, according to the old com-
mon law, carried out the intention of the testator, by
securing the benefit of the gift to the children, defeats
that intention by cutting them out completely. The
court held, that for these reasons, and in order to effect-
uate the manifest intent of the testator, a different rule
of construction must be here adopted; and accordingly,
a devise to a parent and his children, the parent not
having any children when the devise took effect, was
construed to give a life-estate to the parent, with remain-
der to the children, because in no other way can the
devise to the children be made effectual. The same con-
siderations would, of course, apply to bequests of person-
alty, in which an estate-tail cannot exist.

Though the second, as well as the first branch of the
old rule, has been recognized as in force in this State,

(25 Ala. 292,) and has not been abandoned in England, or, so far as we are aware, in any of the States of the Union, except Kentucky, there is no doubt that a strong disposition has been frequently shown, in this class of devises, to consider slight circumstances in the context as justifying the courts in confining the parent's interest to one for life, and giving the children the remainder; for the reason, that the construction which gives the parent the absolute property, cuts the children out completely, although they are expressly named as objects of the testator's bounty.—See what is said by Lord Hardwicke, in Buffar v. Bradford, 2 Atk. 220; 2 Sim. 490; 2 Jarm. 316. In both of the classes of cases alluded to, the courts incline to act upon the rule to include as many objects of the gift as possible, consistently with the declared purpose of the testator.—2 Phill. 351.

The same considerations which would justify a departure from the rule in the construction of a will, would be equally controlling in the case of a deed.—See Chesnut v. Meares, 3 Jones' Eq. 416.

A reference to some of the cases will illustrate and confirm what has been said, as to the inclination which some courts have shown to make this rule bend to slight indications in the context of an intention on the part of the testator to give the parent an estate for life, with remainder to the children.

In Jeffery v. Honeywood, (4 Madd. 398,) where a testator gave certain estates, "to A., and to all and every child and children, whether male or female, of her body lawfully issuing, and unto his, her, and their heirs or assigns forever, as tenants in common;" A. died in the life-time of the testator, leaving ten children; Sir John Leach said: "There are two gifts—one to the mother, without word of limitation superadded, and another to her children, their heirs or assigns; and these two gifts can only be rendered sensible by construing, as the words import, a life-estate to the mother, and a remainder in fee to the children."

In Crawford v. Trotter, (4 Madd. 361,) a bequest of £1,000 three per cent. reduced annuities "to A. and to

her heirs, (say children,)" was held to give a life-interest to A., and the capital to her children.

In Morse v. Morse, (2 Sim. 485,) where a testator gave to his daughter A. and her children £5,000 for their sole use and support, £3,000 to be paid in one year after his decease, and £2,000 after the decease of his wife, and appointed A. B. trustee of those sums for his daughter and her children; it was held, that the £5,000 was in trust for the daughter for life, and, after her decease, for all her children, whether born in the testator's lifetime or after his decease.

In Vaughan v. Marquis of Headfort, (10 Sim. 639,) the bequest was of £40,000 "to the marquis of Headfort and his children, to be secured for their use." The marquis had six children at the death of the testatrix. Sir L. Shadwell, vice-chancellor, held, that the father took for his life, and his children after his death; "and that construction will let in any children of the marquis that may be here after born."

A testator gave to his niece E. G. the sum of £7,000, and to her heirs, for her separate use; the sum of £7,000, to be invested in consols, in the names of A. and B., who were appointed trustees of the donation, to receive the interest of the stock, and to be answerable for the stock, for the use of E. G. and her children, and to apply it in the manner most conducive to their interest; E. G. to pay her mother, during her life, the sum of £40 *per annum.* Held, that E. G. was entitled for life, with remainder to her children born at and after the death of the testator.—Ogle v. Corthorn, (14 L. J., N. S. 337,) cited in 4 Eq. Dig. 3099, § 13.

In French v. French, (11 Sim. 257,) the testator gave £5,000 to his sons, in trust for his daughter Mrs. W., so as not to be subject to the debts, &c., of her husband; and he gave the like sum to Mrs. A. "in trust as aforesaid, for the use of herself and her children." Mrs. A. had two children living at the testator's death. Held, that they did not take either as joint tenants, or tenants in common with her; but that she was entitled to the

whole income of the fund for her life, with remainder to her children.

In Chesnut v. Meares, (3 Jones' Eq. R. 416,) the question was upon the construction of a deed, by which Joab Meares, for a nominal pecuniary consideration, "and for the further consideration of love and affection for his wife Polly Meares, as well as for her better maintenance and support," conveyed to a trustee, in trust for his wife, certain negroes, (warranting the same to the trustee,) "for the said Polly Meares and her children which she has or may have by me; the trustee never to dispossess my said wife and my children which I have or may have by her," and to "suffer her to enjoy, together with the children, the benefit, use and profits of the negroes forever." The court held, that the mother took the whole property for life, with remainder to all her children, as a class.

In Ponton v. McLemore, (2 Dev. & Batt. Eq. 285,) a testator gave a legacy in trust for his daughter, "for the maintenance of her and her children," to be applied at the discretion of the trustee, no part thereof to be the subject to the debts of her husband. It was held, that there was a bequest to the sole use of the daughter for life, and after her death to her children.

For other illustrations of the leaning of the courts to limit the parent to a life-estate, and to give the children the remainder, where the gift is to one and his children, there being children at the time, see Hannan v. Osborne, 4 Paige, 341; Wood v. Baron, 1 East, 259; Crockett v. Crockett, 2 Phill. Ch. 555.

In Bridges v. Wilkins, (3 Jones' Eq. 342,) the material parts of the will were as follows: "*Item* 1*st.* After paying all my just debts out of cash on hand, or debts due me, I give and bequeath the balance of my property to my sisters that may be living at the time of my death, and their lawful *issues*, except the slaves. *Item* 2*d.* The slaves of which I am seized and possessed, I give to my mother during her natural life, and after her death to go to my sisters and their children as above mentioned; with the express condition, that no property, of which I am now possessed, or may hereafter fall heir to, shall go

to any but my sisters directly, and their progeny, and not their husbands. * * * *  *Item 4th.* I give and bequeath to my sisters, as before stated, my life-policy of $5,000." The testator left six sisters surviving him, of whom only one was married. The court held, that the words *"issues"* and *"progeny"* were used in the sense of *children,* and that each of the sisters took an estate for life in the slaves and *other property,* with remainder to her children.

In Heron v. Stokes, (2 Dr. & War. 89; S. C., 4 Ir. Eq. R. 284,) it was held, that a gift by will of personal annuities, to A. and B., for themselves and their children, they not having any at the date of the will, or at the death of the testator, gives them only a life-interest. In that case, Sir Ed. Sugden suggested, that the more natural construction of a gift to one and his children, there being no children in *esse* at the time, and that which he should have adopted in the absence of authority the other way, would be, to hold it to be a gift to the parent for life, with remainder to the children. To the same effect, see the remarks of V. C. Sir L. Shadwell, 12 Sim. 188.

In Furlow's Adm'r v. Merrill, (23 Ala. 705,) the bequest was in these words: "I give to my daughter Cynthia Hill one negro girl, named Ann, together with all her increase, entirely for my daughter's benefit and her children." It did not appear whether or not the legatee had any children at the time the will took effect. This court, after mentioning this, said: "This latter fact, as we construe the words of the bequest, is absolutely essential to be known, in order to determine with any accuracy the estate which Cynthia Hill took in the bequest. If she was then unmarried, the bequest would, in our opinion, create a life-estate simply in Cynthia Hill, with remainder over to her children; but, if she was married and had children at the time that the will took effect, then she would take absolutely a joint estate with the children.— Nimmo v. Stewart, 21 Ala. 682."

Without wishing to be understood as approving of all the decisions we have referred to, we cite them for the purpose of showing the strong disposition which the courts have manifested, in cases like the present, to con-

sider slight circumstances in the context as sufficent to justify them in holding that the parent shall take only for life, with remainder to his children.  See, also, 2 Wms. Ex'rs, 938 ; McCroan v. Pope, 17 Ala.; Lushington v. Sewell, 1 Sim. 435 ; Newman v. Nightengale, 1 Cox, 341 ; Wilson v. Vansittart, Ambl. 562 ; Paine v. Wagner, 12 Sim. 188 ; *Baine v. Lescher*, 11 Sim. 397 ; Elmore v. Mustin, 28 Ala. 309.

In the present case, the gift is to a daughter and her children, the daughter having no children at the time. The words are, that in consideration of the donor's love and affection for his daughter, "and wishing to make permanent support for her and her children, I do hereby give," &c.; "but, in case the said Prudence shall die without *an heir*," (which expression, the context shows, is to be here construed in the sense of *child*,) "the said negroes to return," &c.  The vesting of the absolute property in the daughter is inconsistent with the declared purpose of the donor, that the gift was to make *permanent* support for her and her *children*.  Then the provision, that on her dying without a child, her brothers and sisters should take the negroes with their increase, fortifies the supposition, that the donor meant to give her but a life-estate, with remainder to her children.  The donor's declared wish, that the children shall derive a permanent support from the negroes, is best accomplished by holding that they take, as remainder-men, the absolute property on the death of their mother.

It is unnecessary for us to determine, whether the daughter took the entire interest in the slaves for her life, or whether her children had, even during the life of their mother, a right to be supported by the services of the negroes, or a share in the profits of their labor.  Nor do we feel called upon to decide, whether the terms of the deed were such as to exclude the marital rights of the husband of Mrs. Williams, (see Furlow v. Merrill, 23 Ala. 705,) nor whether the limitation over on the death of the daughter "without an *heir*" (or *child*) was too remote, (see Stone v. Maule, 2 Sim. 490 ; 2 Jarm. 437–8 ; 5 Day, 517 ; 6 Rich. Eq. 399 ; 25 Ala. 315.)  We go as far as is at all

necessary, when we hold that, whatever interest vested in the daughter of the donor, terminated on her death, leaving children, and that her children then took the entire property as remainder-men.

[2—3.] We feel constrained, however, to hold, that the legal title of the trustee did not cease at the death of Mrs. Williams; and consequently, the interest of her children is equitable, not legal.—Bryan v. Weems, 29 Ala. 423; Andrews v. Huckabee, 30 Ala. 153–4. Neither the English statute of uses, nor the 8th section of our act of 1812, which was in force when this deed was made, and which was probably designed as a substitute for the English statute, has any application to personalty. Lewin on Trusts, p. 7; Hill on Trustees, 63, 230; Clay's Digest, 156, § 35. The legal title not being in the plaintiffs, the court did not err in the charge given. If the children of Mrs. Williams wish to proceed in their own names, they must assert their rights in another forum.

It was not shown that the record, which the plaintiffs offered in evidence, had any connection whatever with the property in controversy, or with the deed under which they claimed title; and if such connection were shown, we do not perceive the relevancy of the evidence to any of the issues in the cause. Even if it were admitted that the first trustee had resigned, and that Mr. Williams had been duly appointed trustee in his place, we do not perceive that the death of the substituted trustee would have the effect of vesting the legal estate in the children, so as to enable them to recover the possession of the slaves by suit in their own names.

Judgment affirmed.